**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IDUNN IP HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>LG ELECTRONICS INC. and<br>LG ELECTRONICS U.S.A., INC.,<br><br>*Defendants.* | Civil Action No. 2:26-cv-00574-RWS<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IDUNN IP Holdings LLC files this First Amended Complaint for Patent Infringement, as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), against Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LG" or "Defendants"), alleging as follows:

**NATURE OF SUIT**

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**THE PARTIES**

2. Plaintiff IDUNN IP Holdings LLC ("IDUNN" or "Plaintiff") is a limited liability company duly formed under the laws of the State of Texas with a place of business at 8140 Walnut Hill Lane, Suite 615, Dallas, Texas 75231.

3. IDUNN is the assignee and owns all rights, title, and interest in and to U.S. Patent No. 7,551,254; No. 7,760,278; No. 8,047,668; No. 8,373,624; No. 8,956,033; No. 9,000,425; No. 9,312,287; and No. 9,436,305 (collectively, the "Asserted Patents").

4. Defendant LG Electronics Inc. ("LGE") is an entity organized under the laws of the Republic of Korea with a principal place of business at LG Twin Towers, 128 Yeoui-daero, Yeongdeungpo-gu, Seoul 07336, Republic of Korea.

5. Defendant LG Electronics U.S.A., Inc. ("LGUSA") is a Delaware corporation with a principal place of business at 111 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. LGUSA is registered to do business in the State of Texas, maintains physical facilities within this District at 2153 Eagle Parkway, Fort Worth, Texas 76177 and 14901 North Beach Street, Fort Worth, Texas 76177, and may be served with process through its registered agent in the State of Texas, United States Corporation Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

6. On information and belief, LGUSA is a wholly owned subsidiary of LGE.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

### I. LGE

8. LGE is subject to specific and general personal jurisdiction in this Court. This Court has personal jurisdiction over LGE because, on information and belief, LGE has engaged in continuous, systematic, and substantial activities within the State of Texas. Furthermore, on information and belief, this Court has personal jurisdiction over LGE because IDUNN's claims of patent infringement arise out of or relate to LGE's acts of patent infringement within and directed to this District.

9. On information and belief, LGE, directly and/or through subsidiaries, agents, representatives, or intermediaries (including LGUSA), has conducted, and does conduct, substantial business in this District, including but not limited to: (i) at least a portion of the acts of

infringement herein alleged; (ii) purposefully and voluntarily placing one or more infringing products and services into the stream of commerce with the expectation that they will be purchased by consumers in this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District. Thus, LGE is subject to this Court's specific and general personal jurisdiction pursuant to the Due Process Clause and the Texas Long-Arm Statute.

10. On information and belief, LGE designs, develops, manufactures, supplies, and/or directs the manufacture and commercialization of the Accused Products. LGE purposefully places Accused Products into the stream of commerce with the expectation and/or intent that they will be purchased throughout the United States, including in Texas and in this District.

11. LGE has knowledge that the Accused Products are distributed, marketed, offered for sale, and sold throughout the United States through an established distribution network that includes LGUSA and other distributors. LGE derives substantial revenue from the sale of the Accused Products in the United States, including in Texas and in this District.

12. On information and belief, LGUSA is wholly owned and controlled by LGE, which directs, authorizes, and/or ratifies LGUSA's activities relating to the importation, distribution, marketing, and sale of the Accused Products in the United States, including in this District.

13. On information and belief, LGUSA operates as LGE's agent and/or alter ego with respect to the distribution, marketing, and sale of the Accused Products in the United States. LGE and LGUSA operate in an integrated manner with coordinated product development, branding, marketing, sales, and distribution strategies. LGE exercises control over LGUSA's activities and benefits financially from LGUSA's infringing activities in this District.

14. On information and belief, LGE has purposefully directed activities toward this District by, among other things, designing and supplying Accused Products intended for distribution in this District, coordinating with distribution channels that deliver Accused Products into this District, and providing technical, marketing, and commercial support directed to customers in the United States, including in the State of Texas.

15. IDUNN's claims arise out of or relate to LGE's activities directed toward the State of Texas and this District, including LGE's design, manufacture, supply, and commercialization of Accused Products that are distributed, offered for sale, and/or sold in this District.

16. In addition, or in the alternative, to the extent LGE is not subject to jurisdiction in any state's courts of general jurisdiction, LGE is subject to this Court's personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), as the claims herein alleged arise under federal law and the exercise of jurisdiction is consistent with the United States Constitution and laws.

17. The exercise of personal jurisdiction over LGE would not offend traditional notions of fair play and substantial justice.

18. LGE has previously acknowledged that this Court has personal jurisdiction over it. *See, e.g., Advanced Coding Techs. LLC v. LG Elecs. Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00501-JRG, Dkt. No. 16 at 2, ¶ 5 (E.D. Tex. Apr. 27, 2023) ("LG[E] admits that this Court has personal jurisdiction over LG[E]."). Furthermore, LGE has previously availed itself of this Court by bringing its own patent infringement claims. *See, e.g.*, *LG Elecs. Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:22-cv-00122-JRG, Dkt. No. 1 (E.D. Tex. Apr. 21, 2022). Accordingly, the exercise of personal jurisdiction over LGE is reasonable and fair because LGE intentionally exploits the United States market, including the markets in Texas and this District, derives substantial economic benefit from sales of the Accused Products nationwide, including in Texas and this

District, and can reasonably expect to be brought into court in this District where its products are distributed, offered for sale, and/or sold.

19. Venue is proper under 28 U.S.C. § 1391(b)-(c) for LGE, a Korean company, because venue is proper in any judicial district against a foreign entity.

**II. LGUSA**

20. LGUSA is subject to specific and general personal jurisdiction in this Court. This Court has personal jurisdiction over LGUSA because, on information and belief, LGUSA has engaged in continuous, systematic, and substantial activities within the State of Texas. Furthermore, on information and belief, this Court has personal jurisdiction over LGUSA because IDUNN's claims of patent infringement arise out of or relate to LGUSA's acts of patent infringement within and directed to this District.

21. On information and belief, LGUSA, directly and/or through parents, subsidiaries, agents, representatives, or intermediaries (including LGE), has conducted, and does conduct, substantial business in this District, including but not limited to: (i) at least a portion of the acts of infringement herein alleged; (ii) purposefully and voluntarily placing one or more infringing products and services into the stream of commerce with the expectation that they will be purchased by consumers in this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in the State of Texas and in this District. Thus, LGUSA is subject to this Court's specific and general personal jurisdiction pursuant to the Due Process Clause and the Texas Long-Arm Statute.

22. On information and belief, LGUSA engages in wide-ranging promotional activities for display devices, including the Accused Products, throughout Texas and in this District, such as

television, print, online, and direct-mail advertisements. For example, LGUSA offers to sell and/or sells infringing products directly to customers in the United States, including in this District, through its official online marketplace, www.lg.com/us, which allows consumers, businesses, and other end users throughout the United States and this District to purchase infringing products, including the Accused Products.

23. On information and belief, LGUSA has substantial connections to the State of Texas, including within this District. For example, LGUSA has regular and established places of business in this District at 2153 Eagle Parkway, Fort Worth, Texas 76177 and at 14901 North Beach Street, Fort Worth, Texas 76177.

24. LGUSA's North Beach Street location is a distribution center, warehouse, logistics facility, and/or other physical place of business in this District. This facility is a regular and established place of business from which LGUSA stores, distributes, ships, and supports the sale of the Accused Products.

25. LGUSA, directly and/or through intermediaries, imports, distributes, markets, offers for sale, sells, and supports the Accused Products throughout the United States, including within Texas and this District. On information and belief, Accused Products are shipped to customers and retailers located in this District from or through LGUSA's distribution facilities located in this District, including from LGUSA's North Beach Street facility.

26. LGUSA has purposefully directed its commercial activities toward Texas and this District by, among other things, maintaining distribution operations here, supplying Accused Products to customers throughout the State of Texas and in this District, and deriving substantial revenue from the sale of Accused Products throughout the State of Texas and in this District.

27. IDUNN's claims arise out of or relate to LGUSA's acts of infringement in this District, including LGUSA's importation, offering for sale, and sale of the Accused Products.

28. Personal jurisdiction over LGUSA in this action comports with the Due Process Clause such that the exercise of personal jurisdiction over LGUSA would not offend traditional notions of fair play and substantial justice. For example, LGUSA has conducted and regularly conducts business within this District. Indeed, LGUSA has admitted it conducts business in this District: "LGEUS admits that it conducts business in the Eastern District of Texas." *Advanced Coding Techs. LLC v. LG Elecs. Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00501-JRG, Dkt. No. 16 at 2, ¶ 6 (E.D. Tex. Apr. 27, 2023). LGUSA has purposefully availed itself of the privileges of conducting business within this District, and LGUSA has sought protection and benefit from the laws of the State of Texas by placing infringing products into the stream of commerce through an established distribution channel with awareness and/or intent that they will be purchased by consumers in this District. Having purposefully availed itself of the privilege of conducting business within this District, LGUSA should reasonably and fairly anticipate being brought into court here.

29. Accordingly, LGUSA has repeatedly acknowledged or not contested that this Court has personal jurisdiction over it in recent patent infringement actions brought against it in this District. *See, e.g.*, *Advanced Coding Techs. LLC v. LG Elecs. Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00501-JRG, Dkt. No. 16 at 2, ¶ 5 (E.D. Tex. Apr. 27, 2023) ("LG[USA] admits that this Court has personal jurisdiction over LG[USA]."); *Sovereign Peak Ventures, LLC v. LG Elecs., Inc. and LG Elecs. U.S.A., Inc.*, No. 2:20-cv-00107-JRG, Dkt. No. 14 at 11 (E.D. Tex. Aug. 5, 2020) ("for purposes of this action, LG USA does not contest personal jurisdiction in this lawsuit."); *WFR IP LLC v. LG Elecs., Inc. and LG Elecs. U.S.A., Inc.*, No. 2:22-cv-00245-RWS-

RSP, Dkt. No. 16 at 2, ¶ 5 (E.D. Tex. Nov. 23, 2022) ("[Defendants] do[] not contest that the Court has personal jurisdiction over . . . LGEUS for the purposes of this particular action only . . . .").

30. Venue is proper against LGUSA under 28 U.S.C. § 1400(b) because it has maintained regular and established physical places of business in this District and has committed acts of patent infringement in this District.

31. Denton County property tax records reflect that LGUSA owns property at 14901 North Beach Street, Fort Worth, Texas 76177.[1]

32. Denton County property tax records further reflect that LGUSA owns property at 2153 Eagle Parkway, Fort Worth, Texas 76177.[2]

33. LGUSA's Fort Worth offices are physical locations in this District from which LGUSA carries out its business.

34. LG's regular and ongoing presence in this District is further demonstrated by LG locating its first factory for producing EV charging stations at 2153 Eagle Parkway in Fort Worth. This new plant "builds on LG's longtime presence as a corporate citizen in Fort Worth, where its million-square-foot distribution center for consumer electronics and home appliances has been located for three decades."[3]

35. On information and belief, LGUSA employees in this District, including from LGUSA's offices in Fort Worth, design, develop, market, sell, and/or support infringing products, including the Accused Products.

---

[1] https://taxweb.dentoncounty.gov/Accounts/AccountDetails?TaxAccountNumber=657779DEN.
[2] https://taxweb.dentoncounty.gov/Accounts/AccountDetails?TaxAccountNumber=970177DEN.
[3] https://www.lg.com/us/press-release/lg-opens-first-us-factory-to-produce-advanced-ev-chargers.

## ASSERTED PATENTS

36. The Asserted Patents arise from the research and development of a family of Taiwanese display manufacturers (Chi Mei Optoelectronics Corporation, Innolux Display Corp., and TPO Displays Corp.), which merged in March 2010 to form Chimei Innolux Corporation, renamed Innolux Corporation in December 2012 (collectively with its predecessors, "Innolux"). Innolux is one of the world's largest manufacturers of thin film transistor liquid crystal display ("TFT-LCD") panels and other display modules.

37. IDUNN acquired the Asserted Patents from Innolux Corporation, including all rights, title, and interest in and to the Asserted Patents and the right to sue and recover for past infringement. The assignments of the Asserted Patents to IDUNN have been recorded with the United States Patent and Trademark Office.

### I. THE '254 PATENT

38. United States Patent No. 7,551,254 (the "'254 Patent") is entitled "Displaying Device with Predetermined Pattern for Repairing Electrical Defects Having Slit Region in TFT Controlled Electrode in Which a First Slit Therein Corresponds to a Space Separating First and Second Capacitor Electrodes." The United States Patent and Trademark Office duly and legally issued the '254 Patent on June 23, 2009, from U.S. Patent Application No. 11/119,342, filed on April 28, 2005.

39. The '254 Patent claims priority to Taiwanese Patent Application No. 93112096, filed on April 29, 2004.

40. IDUNN is the current owner of all rights, title, and interest in and to the '254 Patent, including the right to sue for past damages.

41. A true and correct copy of the ’254 Patent is attached as **Exhibit A** and is incorporated by reference.

42. The ’254 Patent generally relates to a liquid crystal displaying device with a pixel structure that both enables the repair of electrical defects arising during manufacturing and improves the viewing characteristics of a vertical-alignment liquid crystal display.

43. The ’254 Patent solves technological problems relating to pixel defects in liquid crystal display panels. As the ’254 Patent explains, defects introduced during manufacturing (for example, a particle that creates a short circuit at a pixel’s storage capacitor) can render a pixel permanently inoperable, producing a visible point defect. In a conventional pixel design, repairing such a defect required cutting away conductors in a manner that sacrificed the pixel’s storage capacitance, such that the “repaired” pixel could not properly hold its voltage and still displayed incorrectly.

44. The ’254 Patent discloses, in exemplary embodiments, a pixel design in which the storage capacitor is divided into a first capacitor electrode and a second capacitor electrode that are electrically connected to each other through the pixel electrode controlled by the thin film transistor, and in which a slit region in the pixel electrode includes a slit positioned corresponding to the space separating the two capacitor electrodes. If a defect occurs at one capacitor electrode, that electrode can be isolated with minimal loss of pixel area and capacitance. In a vertical-alignment liquid crystal display, the slit region serves an additional function: it adjusts the orientation of the liquid crystal molecules so that they incline in a plurality of directions when a voltage is applied, improving viewing-angle performance.

45. Defendants are not licensed to the ’254 Patent and were not licensed during the six years preceding this lawsuit.

## II. THE ’278 PATENT

46. United States Patent No. 7,760,278 (the “’278 Patent”) is entitled “Liquid Crystal Display Comprising a Ground Electrode and Method for Manufacturing the Same.” The United States Patent and Trademark Office duly and legally issued the ’278 Patent on July 20, 2010, from U.S. Patent Application No. 11/974,846, filed on October 16, 2007.

47. The ’278 Patent claims priority to Taiwanese Patent Application No. 95138082, filed on October 16, 2006.

48. IDUNN is the current owner of all rights, title, and interest in and to the ’278 Patent, including the right to sue for past damages.

49. A true and correct copy of the ’278 Patent is attached as **Exhibit B** and is incorporated by reference.

50. The ’278 Patent generally relates to a liquid crystal panel with an electrode arrangement at the periphery of the panel that protects the panel from damage caused by electrostatic discharge.

51. The ’278 Patent solves a technological problem relating to electrostatic discharge in liquid crystal display panels. As the ’278 Patent explains, electrostatic discharge can damage electrical elements in a liquid crystal panel, such as its conductive metal lines and driver IC. In conventional panels, a transparent conductive layer on the color filter substrate extended to the edge of the panel, where it could pick up electrostatic charge from the environment and conduct it into the interior of the panel, damaging circuit elements.

52. The ’278 Patent discloses, in exemplary embodiments, a liquid crystal panel in which the conductive layer of the color filter substrate does not cover the peripheral region of the substrate; a ground electrode is formed at the peripheral region of the thin film transistor substrate,

generally adjacent to the common electrode and insulated from the common electrode by a groove; and the sealant that joins the two substrates encloses the conductive layer and the common electrode and covers the ground electrode. With this geometry, the conductive layer is enclosed by the sealant and is not exposed to the external atmosphere, so that the introduction of static electricity to the conductive layer is avoided and the electrical elements within the panel are protected from damage caused by electrostatic discharge.

53. Defendants are not licensed to the ’278 Patent and were not licensed during the six years preceding this lawsuit.

## III. THE ’668 PATENT

54. United States Patent No. 8,047,668 (the "’668 Patent") is entitled "Display Device, Backlight Module of Such Display Device, and Method of Fixing Circuit Board on Such Backlight Module." The United States Patent and Trademark Office duly and legally issued the ’668 Patent on November 1, 2011, from U.S. Patent Application No. 12/392,213, filed on February 25, 2009. The ’668 Patent claims priority to Taiwanese Patent Application No. 97106693, filed on February 26, 2008.

55. IDUNN is the current owner of all rights, title, and interest in and to the ’668 Patent, including the right to sue for past damages.

56. A true and correct copy of the ’668 Patent is attached as **Exhibit C** and is incorporated by reference.

57. The ’668 Patent generally relates to a display device and backlight module in which a circuit board is fixed in place using structures integrated with the backlight module’s lamp cover.

58. The ’668 Patent solves a technological problem relating to the mechanical assembly of display devices. As the ’668 Patent explains, the circuit boards that drive a display panel must

be mechanically anchored behind the backlight module. Conventional approaches used screws or adhesives, which can be unreliable.

59. The ’668 Patent discloses, in exemplary embodiments, a display device in which the lamp cover (the reflective cover that partially surrounds the backlight’s light source) includes at least one protruding portion located at its outer surface and integrated with the lamp cover so as to serve as a fixing structure. The circuit board is disposed on the outer surface of the lamp cover, and the protruding portion contacts a fixing portion of the circuit board, constraining movement of the circuit board relative to the lamp cover without requiring separate fasteners.

60. Defendants are not licensed to the ’668 Patent and were not licensed during the six years preceding this lawsuit.

**IV. THE ’624 PATENT**

61. United States Patent No. 8,373,624 (the “’624 Patent”) is entitled “Organic Light Emitting Display (OLED) Devise, Modules, and Electronic Devices.” The United States Patent and Trademark Office duly and legally issued the ’624 Patent on February 12, 2013, from U.S. Patent Application No. 12/316,938, filed on December 17, 2008.

62. The ’624 Patent claims priority to Taiwanese Patent Application No. 97100315, filed on January 4, 2008.

63. IDUNN is the current owner of all rights, title, and interest in and to the ’624 Patent, including the right to sue for past damages.

64. A true and correct copy of the ’624 Patent is attached as **Exhibit D** and is incorporated by reference.

65. The ’624 Patent generally relates to an organic light emitting display (“OLED”) device architecture in which the black matrix layer on the color filter substrate is used as an electrical pathway to deliver power to the cathode of the OLED pixels.

66. The ’624 Patent solves a technological problem relating to the reliability of the cathode connection in OLED displays. As the ’624 Patent explains, the cathode of an OLED display is a thin film. In conventional designs, connecting the cathode to a power line required the thin cathode film to traverse steps in the underlying structure, where poor step coverage can crack the film and break the electrical connection, degrading reliability.

67. The ’624 Patent discloses, in exemplary embodiments, an OLED device in which the black matrix layer (the opaque, conductive grid that encloses the color filter elements) is extended into a region corresponding to the peripheral region of the active matrix substrate. A first conductive component electrically connects the control circuit on the active matrix substrate to the extension of the black matrix layer, and a second conductive component electrically connects the black matrix layer to the cathode. Power is thereby routed to the cathode through the black matrix, avoiding the fragile step-coverage connection of conventional designs.

68. Defendants are not licensed to the ’624 Patent and were not licensed during the six years preceding this lawsuit.

## V. THE ’033 PATENT

69. United States Patent No. 8,956,033 (the “’033 Patent”) is entitled “Display Device and Backlight Module.” The United States Patent and Trademark Office duly and legally issued the ’033 Patent on February 17, 2015, from U.S. Patent Application No. 13/456,917, filed on April 26, 2012.

70. IDUNN is the current owner of all rights, title, and interest in and to the ’033 Patent, including the right to sue for past damages.

71. A true and correct copy of the ’033 Patent is attached as **Exhibit E** and is incorporated by reference.

72. The ’033 Patent generally relates to a display device and backlight module with a frame structure that reduces the width of the border surrounding the active display area.

73. The ’033 Patent solves a technological problem relating to the border, or bezel, of display devices. As the ’033 Patent explains, conventional backlight modules used a plastic casing and adhesive to join the backlight module to the display panel, a construction that required a wide border around the display area. The ’033 Patent describes the width of the border as a bottleneck in the development of display devices.

74. The ’033 Patent discloses, in exemplary embodiments, a display device comprising a bottom frame, a light guide disposed above the bottom frame, an optical film structure disposed above the light guide, and a top frame that covers a periphery of the optical film structure and covers a lateral side of the bottom frame. The top frame includes a first board, disposed between the optical film structure and the display panel, and a second board connected to the first board and covering a lateral surface of the light guide. This thin frame structure clamps the backlight components together and masks the edge of the optical films while occupying far less width than the conventional plastic casing, enabling a narrower border.

75. Defendants are not licensed to the ’033 Patent and were not licensed during the six years preceding this lawsuit.

## VI. THE ’425 PATENT

76. United States Patent No. 9,000,425 (the “’425 Patent”) is entitled “Organic Light Emitting Diode, and Panel and Display Using the Same.” The United States Patent and Trademark Office duly and legally issued the ’425 Patent on April 7, 2015, from U.S. Patent Application No. 13/934,367, filed on July 3, 2013.

77. The ’425 Patent claims priority to Taiwanese Patent Application No. 101124764, filed on July 10, 2012.

78. IDUNN is the current owner of all rights, title, and interest in and to the ’425 Patent, including the right to sue for past damages.

79. A true and correct copy of the ’425 Patent is attached as **Exhibit F** and is incorporated by reference.

80. The ’425 Patent generally relates to an organic light emitting diode having a resonance enhancing layer disposed between a reflecting layer and a first electrode.

81. The ’425 Patent solves a technological problem relating to optical resonance effects in OLED devices. As the ’425 Patent explains, in an OLED having a reflective layer below the organic light-emitting stack and a partially transparent electrode above it, the structure forms an optical cavity in which certain wavelengths of light are reinforced and others are suppressed. In conventional thin-cavity designs, this microcavity effect distorts the balance of emitted colors and causes the color of emitted light to shift with viewing angle.

82. The ’425 Patent discloses, in exemplary embodiments, an organic light emitting diode comprising a reflecting layer; a resonance enhancing layer disposed on the reflecting layer; a first electrode disposed on the resonance enhancing layer; an organic layer disposed on the first electrode; and a second electrode disposed on the organic layer, wherein the thickness of the

resonance enhancing layer is in a range from 500 nm to 10 µm. By making the optical cavity substantially thicker than in conventional designs, the resonance modes of the cavity become closely spaced across the visible spectrum, reinforcing emitted light more uniformly across wavelengths, improving emission efficiency and reducing variation with viewing angle.

83. Defendants are not licensed to the ’425 Patent and were not licensed during the six years preceding this lawsuit.

## VII. THE ’287 PATENT

84. United States Patent No. 9,312,287 (the “’287 Patent”) is entitled “Display Panel and Display Device.” The United States Patent and Trademark Office duly and legally issued the ’287 Patent on April 12, 2016, from U.S. Patent Application No. 14/625,429, filed on February 18, 2015.

85. The ’287 Patent claims priority to Taiwanese Patent Application No. 103106290, filed on February 25, 2014.

86. IDUNN is the current owner of all rights, title, and interest in and to the ’287 Patent, including the right to sue for past damages.

87. A true and correct copy of the ’287 Patent is attached as **Exhibit G** and is incorporated by reference.

88. The ’287 Patent generally relates to a display panel having a thin film transistor substrate with an insulating-layer structure that protects the transistor and improves the reliability of the connection between the pixel electrode and the transistor’s drain.

89. The ’287 Patent solves technological problems relating to the protection of thin film transistors in a display panel. As the ’287 Patent explains, a thin film transistor that uses a metal oxide semiconductor channel, such as indium gallium zinc oxide (“IGZO”), offers greater carrier

mobility than an amorphous silicon transistor and a simpler manufacturing process than a polycrystalline transistor, but the metal oxide channel is very sensitive to light, water, and oxygen. Even when a conventional protection layer is disposed on the channel layer, the electrical characteristics of the transistor still deviate after a period of time or after heat treatment, reducing the efficiency of the transistor and degrading the display quality of the display panel. The ’287 Patent identifies providing a display panel with stable thin film transistor efficiency, and thus stable display quality, as an important subject.

90. The ’287 Patent discloses, in exemplary embodiments, a display panel in which a first insulating layer including a first sub-layer and a second sub-layer is disposed on the drain of the thin film transistor. The first sub-layer has a first opening with a first width, and the second sub-layer has a second opening, on the first opening, with a second width greater than the first width, the two openings together forming a via with a stepped shape. A passivation layer is disposed on the first insulating layer, a second insulating layer is disposed on the passivation layer, and a pixel electrode layer disposed on the second insulating layer extends into the via to connect to the drain. As the ’287 Patent explains, with the first sub-layer and the second sub-layer sequentially disposed on the drain of the thin film transistor, the efficiency of the transistor is kept stable after a period of operation, and the display quality of the display panel is not affected.

91. Defendants are not licensed to the ’287 Patent and were not licensed during the six years preceding this lawsuit.

## VIII. THE ’305 PATENT

92. United States Patent No. 9,436,305 (the “’305 Patent”) is entitled “Touch Display Apparatus.” The United States Patent and Trademark Office duly and legally issued the ’305 Patent on September 6, 2016, from U.S. Patent Application No. 14/221,991, filed on March 21, 2014.

93. The ’305 Patent claims priority to U.S. Provisional Application No. 61/804,429, filed on March 22, 2013, and to Taiwanese Patent Application No. 102125559, filed on July 17, 2013.

94. IDUNN is the current owner of all rights, title, and interest in and to the ’305 Patent, including the right to sue for past damages.

95. A true and correct copy of the ’305 Patent is attached as **Exhibit H** and is incorporated by reference.

96. The ’305 Patent generally relates to a touch display apparatus in which a buffer element disposed between the substrate of the touch panel and the lower substrate of the display panel provides a buffer between the two substrates.

97. The ’305 Patent solves a technological problem relating to the mechanical structure of touch display devices. In the touch display apparatus described in the ’305 Patent, the lower substrate of the display panel extends beyond the upper substrate along at least one side, and the substrate of the touch panel extends beyond the upper substrate of the display panel along a corresponding side, leaving an edge region of the touch substrate disposed above, and spaced from, the lower substrate. As the ’305 Patent explains, a touch substrate is subject to deformation caused by touch control, and a touch substrate that is adequately supported does not require further strengthening treatment.

98. The ’305 Patent discloses, in exemplary embodiments, a touch display apparatus comprising a display panel having first and second substrates, a touch panel including a touch substrate, and a buffer element disposed between the touch substrate and the first substrate adjacent to the overhanging side of the touch substrate. Along the buffer element’s lengthwise direction, the buffer element has a first length that is less than or equal to the length of the first substrate and

greater than or equal to the length of the touch substrate, so that the buffer element supports the full overhanging edge of the touch substrate.

99. Defendants are not licensed to the '305 Patent and were not licensed during the six years preceding this lawsuit.

## THE ACCUSED PRODUCTS

100. On information and belief, LG designs, develops, makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, display devices, including at least monitors, televisions, and laptop computers, such as the LG UltraGear 24-inch FHD gaming monitor (Model No. 24GS50F-B), the LG UltraGear 32-inch QHD curved gaming monitor (Model No. 32G60WA-B), the LG 43-inch QNED AI QNED70A 4K television (Model No. 43QNED70AUA), and the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), and other substantially similar display devices that utilize the inventions of one or more of the Asserted Patents (collectively, the "Accused Products"). The Accused Products alleged to infringe each Asserted Patent are the products identified in the corresponding Count below.

101. LG has advertised, offered for sale, and sold, and continues to advertise, offer for sale, and sell, the Accused Products, at least through LG's website (https://www.lg.com), through the official LG Store on Amazon and other online marketplaces, and through retail partners such as Best Buy and Walmart.

102. For example, LG offers for sale and sells at least some of the Accused Products directly to consumers in the United States, including in this District, via its official website. *See, e.g.,* https://www.lg.com/us/monitors/lg-32g60wa-b-gaming-monitor.

103. As set forth in greater detail below, LG infringes one or more of the Asserted Patents under 35 U.S.C. §§ 271(a), (b), and/or (c).

**LG'S KNOWLEDGE OF THE ASSERTED PATENTS**

104. On July 10, 2026, IDUNN filed its original Complaint in this action (Dkt. No. 1). The original Complaint identified each of the Asserted Patents, identified the Accused Products and an exemplary asserted claim of each Asserted Patent, attached a copy of each Asserted Patent (Exhibits A through H), and attached, for each Asserted Patent, a limitation-by-limitation claim chart demonstrating how an exemplary Accused Product practices each element of the exemplary asserted claim (Exhibits 1 through 8).

105. IDUNN served the original Complaint on LGUSA on July 17, 2026. Dkt. No. 13. LGE waived formal service of the original Complaint. Dkt. No. 17. On August 4, 2026, counsel for both LGE and LGUSA appeared in this action and moved for an extension of time to respond to the original Complaint. Dkt. No. 15. LG has therefore had actual knowledge of each of the Asserted Patents, and of IDUNN's allegations that the Accused Products infringe them, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE).

106. Since acquiring that knowledge, LG has not ceased, or materially altered, the conduct alleged in this First Amended Complaint. LG has continued to make, import, offer for sale, and sell the Accused Products in the United States; has continued to publish the product pages, specifications, and promotional statements described below; has continued to furnish owner's manuals, quick guides, software, and step-by-step operating instructions for the Accused Products; and has continued to provide technical support to purchasers and users of the Accused Products. IDUNN's claims of induced, contributory, and willful infringement in this First Amended Complaint are directed to LG's conduct on and after the dates on which LG acquired that knowledge.

**LGE'S DIRECTION AND CONTROL OF LGUSA**

107. As alleged above, LGE designs, develops, manufactures, and/or directs the manufacture of the Accused Products; supplies the Accused Products to LGUSA for importation into and distribution and sale within the United States; and directs, authorizes, and ratifies LGUSA's importation, distribution, marketing, and sale of the Accused Products in the United States. On information and belief, LGE controls the design and specifications of the Accused Products, the "LG" branding under which they are sold, and the content of the marketing, specification, support, and instructional materials for the Accused Products that LGUSA publishes at www.lg.com/us and furnishes to purchasers and users in the United States. LGE engages in this conduct with the specific intent that LGUSA import, offer for sale, sell, and support the Accused Products in the United States and that purchasers and users of the Accused Products in the United States use them for their intended purpose.

**NOTICE UNDER 35 U.S.C. § 287**

108. IDUNN is a patent holding company. IDUNN does not make, use, sell, offer for sale, or import any product. At no time since the issuance of any Asserted Patent has IDUNN made, offered for sale, or sold within the United States, or imported into the United States, any article that practices any claim of that patent. IDUNN therefore has no article to mark under 35 U.S.C. § 287(a).

109. LG has had notice of its infringement of each of the Asserted Patents within the meaning of 35 U.S.C. § 287(a) since July 10, 2026, when IDUNN filed the original Complaint in this action with a claim chart for each Asserted Patent (Exhibits 1 through 8), and LG has continued to infringe thereafter.

110. IDUNN presently seeks damages for LG's infringement of each Asserted Patent occurring on and after July 10, 2026. IDUNN does not presently have information sufficient to allege whether, after the issuance of any Asserted Patent, any prior owner or licensee of that patent made, offered for sale, or sold within the United States, or imported into the United States, any article practicing a claim of that patent, or whether any such article was marked. Nothing in this First Amended Complaint is an admission that any such article exists, that any product of any prior owner or licensee practices any claim of the Asserted Patents, or that any obligation to mark arose under 35 U.S.C. § 287(a). IDUNN's election to seek damages from July 10, 2026, is made without waiver, and IDUNN reserves the right to amend, or to seek leave to amend, this pleading to seek damages for the full period permitted by 35 U.S.C. § 286, including if discovery shows that no such article was made, sold, or imported or that the requirements of 35 U.S.C. § 287(a) were otherwise satisfied.

**COUNT I: INFRINGEMENT OF THE '254 PATENT**

111. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

112. LG is and has been directly infringing one or more claims of the '254 Patent, including but not limited to at least Claim 4, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

113. For example, exemplary Claim 4 of the ’254 Patent is directed to:

> 4. A liquid crystal displaying device, at least comprising:
>
> a thin film transistor (TFT);
>
> a first electrode, coupled to and controlled by the TFT, and the first electrode having a first slit region coupled to the first electrode;
>
> a first capacitor electrode and a second capacitor electrode, electrically connected to each other through the first electrode, wherein the liquid crystal displaying device comprises a vertical-alignment liquid crystal layer, and the first slit region is also used for adjusting orientation of the liquid crystal layer so that a plurality of liquid crystal molecules of the liquid crystal layer are inclined into a plurality of directions while a voltage is applied;
>
> a first metal layer formed on a substrate;
>
> a first insulating layer covering the first metal layer;
>
> a second metal layer having a first part and a second part isolated from each other, and the first part and the first metal layer forming the first capacitor electrode, and the second part and the first metal layer forming the second capacitor electrode; and
>
> wherein the first slit region includes a first slit positioned corresponding to a space for separating the first part and the second part of the second metal layer.

114. LG’s liquid crystal display monitors, including at least the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B), practice each element of at least, but not limited to, Claim 4 of the ’254 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG UltraGear 24GS50F-B monitor practices each element of Claim 4 of the ’254 Patent is attached as **Exhibit 1** and is incorporated by reference.

115. The LG UltraGear 24GS50F-B monitor is a liquid crystal displaying device that employs a vertical-alignment liquid crystal layer. Physical teardown analysis of the accused monitor, including cross-sectional imaging and elemental analysis of its display panel, shows that

each pixel of the panel includes a thin film transistor; a pixel electrode coupled to and controlled by the thin film transistor and having a slit region; first and second capacitor electrodes, formed by first and second isolated parts of a second metal layer together with a first metal layer on the substrate and a first insulating layer covering the first metal layer, the capacitor electrodes being electrically connected to each other through the pixel electrode; and a slit positioned corresponding to the space separating the first part and the second part of the second metal layer.

116. LG has had actual knowledge of the ’254 Patent, and of its infringement of the ’254 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN’s original Complaint identifying the ’254 Patent, Claim 4, and the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B), together with the claim chart attached as Exhibit 1 mapping each element of Claim 4 to that product.

117. LG is and has been infringing one or more claims of the ’254 Patent, including but not limited to at least Claim 4, by actively inducing third parties to infringe, including LG’s retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B) has been and is being sold, offered for sale, and/or used by LG’s retail partners, customers, and/or end users. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B). In addition, as alleged below, LGE actively induces LGUSA’s direct infringement of the ’254 Patent.

118. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’254 Patent, including but not limited

to at least Claim 4, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '254 Patent, including but not limited to at least Claim 4.

119. The LG UltraGear 24GS50F-B monitor practices Claim 4 of the '254 Patent as made and sold by LG, as shown in Exhibit 1. Every ordinary use of the LG UltraGear 24GS50F-B monitor for its intended purpose, that is, to display images, is a use of the apparatus claimed in Claim 4 of the '254 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG's statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG UltraGear 24GS50F-B monitor, described below, are therefore statements and materials encouraging acts that directly infringe Claim 4 of the '254 Patent.

120. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG UltraGear 24GS50F-B monitor, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG UltraGear 24GS50F-B monitor. On LG's own U.S. product page for the LG UltraGear 24GS50F-B monitor, LG promotes the product as a "24 Inch UltraGear™ FHD 180Hz AMD FreeSync™ HDR10 Gaming Monitor," lists as "Key features" a "24" FHD (1920 x 1080) Display," a "180Hz Refresh Rate with 1ms MBR," and a "3-Side Virtually Borderless Design," and specifies the panel as "Display Type" of "VA" with a "178º(R/L), 178º(U/D)" viewing angle. LG urges customers to "Ascend your game with the speed of UltraGear," to "Experience next-level Full HD gaming performance," to "Gear up for smooth gameplay at up to 180Hz refresh rate and 1ms MBR," to "Immerse yourself in a world of brilliant and dramatic color and contrast with HDR10 support," and to "Choose from a variety of modes

including Gamer, FPS or RTS to optimize display settings for the best view possible," and tells them: "With two HMDI [sic] ports and DisplayPort connectivity on a tilt adjustable display, game to your specs." The page directs customers to "Find a Retailer" to purchase the product. *See* https://www.lg.com/us/monitors/lg-24gs50f-b-gaming-monitor (last visited Nov. 19, 2026).

121. LG also furnishes purchasers and users of the LG UltraGear 24GS50F-B monitor with instructive materials and technical support that direct them to set up and use the LG UltraGear 24GS50F-B monitor in the manner that infringes Claim 4 of the '254 Patent. LG's U.S. product support page for the LG UltraGear 24GS50F-B monitor offers customers an "Owner's Manual" (English, dated 01/27/2026) and a "Quick Guide" (English and Spanish, dated 01/27/2026) for download. The Owner's Manual, which covers the 24GS50F and states that the "LG LED Monitor applies LCD screen with LED backlights," tells purchasers to "read this manual carefully before operating your set" (Owner's Manual at 1). It then instructs them how to place the monitor ("Lift the monitor and place it on the table in an upright position," at 6); how to connect it to a computer or other video source (an HDMI or DisplayPort connection "[t]ransmits digital video and audio signals from your PC to the monitor," at 12, and "HDMI transmits digital video and audio signals from your AV device to the monitor," at 13); how to turn it on ("Press the joystick button once with your finger to turn on the monitor," at 10); how to select the video input ("Press the joystick button, go to [Menu] > [Input], and then select the input option," at 11); and how to adjust the displayed picture ("[Brightness]: Adjusts the brightness of the screen," at 18, and "[FPS]: This mode is optimized for FPS games," at 15). The Quick Guide likewise tells purchasers to "read this manual carefully before operating your set" (Quick Guide at 1) and illustrates, step by step, attaching the stand, connecting a cable from a computer's HDMI or DisplayPort output to the monitor's "HDMI IN" or "DP IN" port, connecting the power adapter, and pressing the joystick button to turn the

monitor on (Quick Guide at 2–4). A purchaser who follows these instructions connects the monitor to a video source, turns it on, and displays images on its LCD screen. The same support page organizes LG articles' support content under the headings "How to Setup," "How to Operate," "How to Troubleshoot," and "How to Repair," and provides help articles instructing users how to use the monitor, including "LG Monitor - Connecting to a Mac" ("Plug the monitor into the power outlet and check that it is receiving power. . . . Connect the cable . . . ."), "[LG UltraGear Gaming Monitor] How to enable Higher Refresh Rates (120Hz and Above)," and "LG Monitor - How to Adjust Screen Brightness." LG also offers its "OnScreen Control" software for download, "24/7 Chat Support" ("We're here to help you with immediate support around the clock."), and "Video Tutorials" ("How-to and troubleshooting videos on the LG support YouTube channel."). LG's warranty for the monitor applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-24GS50F-B.AUSQ (last visited Nov. 19, 2026).

122. LGE also actively induces LGUSA's direct infringement of the '254 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG UltraGear 24GS50F-B monitor; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG UltraGear 24GS50F-B monitor in the United States, with the specific intent that LGUSA do so.

123. LG has engaged in the conduct described above with knowledge of the '254 Patent and with knowledge that the LG UltraGear 24GS50F-B monitor infringes Claim 4 of the '254 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above.

Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG UltraGear 24GS50F-B monitor or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG UltraGear 24GS50F-B monitor, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 4 of the ’254 Patent.

124. LG has therefore induced infringement by others of one or more claims of the ’254 Patent, including but not limited to at least Claim 4, with the specific intent to induce acts that constitute infringement of the ’254 Patent and with knowledge that such acts infringe one or more claims of the ’254 Patent, including but not limited to at least Claim 4.

125. LG is and has been infringing one or more claims of the ’254 Patent, including but not limited to at least Claim 4, by contributing to infringement by third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, including the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B), within this District and throughout the United States. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the ’254 Patent, including but not limited to at least Claim 4, and (i) are a material part of the inventions claimed in the ’254 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions

claimed in the ’254 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

126. LG has therefore contributed to the infringement by others of one or more claims of the ’254 Patent, including but not limited to at least Claim 4.

127. LG’s infringement of one or more claims of the ’254 Patent, including but not limited to at least Claim 4, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’254 Patent and of IDUNN’s detailed, limitation-by-limitation allegations (Exhibit 1) that the LG UltraGear 24GS50F-B monitor infringes Claim 4 of the ’254 Patent. Despite that knowledge, LG did not and has not ceased its infringing activities and, on information and belief, has not materially modified the LG UltraGear 24GS50F-B monitor or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG UltraGear 24GS50F-B monitor and to encourage and instruct others to sell and use it, in disregard of IDUNN’s patent rights. LG has therefore deliberately and intentionally infringed the ’254 Patent, and continues to do so, after receiving express and actual knowledge of both the ’254 Patent and its infringement thereof.

128. LG’s infringement of the ’254 Patent, including but not limited to at least Claim 4, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**COUNT II: INFRINGEMENT OF THE '278 PATENT**

129. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

130. LG is and has been directly infringing one or more claims of the '278 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

131. For example, exemplary Claim 1 of the '278 Patent is directed to:

> 1. A liquid crystal panel comprising:
>
> a thin film transistor (TFT) substrate, which comprises a common electrode and a ground electrode;
>
> a color filter (CF) substrate opposite to the TFT substrate, the CF substrate comprising a conductive layer formed thereat;
>
> a liquid crystal layer sandwiched between the TFT and the CF substrates; and
>
> a sealant provided between the TFT substrate and the CF substrate at a peripheral region of the TFT substrate and the CF substrate;
>
> wherein the conductive layer is adjacent to the liquid crystal layer and does not cover the peripheral region of the CF substrate, the common electrode is adjacent to the liquid crystal layer, the ground electrode is formed at the peripheral region of the TFT substrate and is generally adjacent to the common electrode, the common electrode and the ground electrode are insulated from each other via a groove, and the sealant encloses the conductive layer and the common electrode therein and covers the ground electrode.

132. LG's liquid crystal display televisions, including at least the LG 43-inch QNED television (Model No. 43QNED70AUA), practice each element of at least, but not limited to, Claim 1 of the '278 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how

the LG 43QNED70AUA television practices each element of Claim 1 of the ’278 Patent is attached as **Exhibit 2** and is incorporated by reference.

133. The LG 43QNED70AUA television is an LED-backlit liquid crystal display television containing a liquid crystal panel comprising a TFT substrate, a color filter substrate, a liquid crystal layer sandwiched between the substrates, and a perimeter sealant. Physical teardown analysis of the accused television, including cross-sectional imaging of the peripheral region of its panel, shows a ground electrode formed at the peripheral region of the TFT substrate and a sealant that covers the ground electrode. On information and belief, the panel includes a common electrode adjacent to the liquid crystal layer, and the ground electrode is generally adjacent to the common electrode and insulated from the common electrode via a groove; the color filter substrate comprises a conductive layer that is adjacent to the liquid crystal layer and does not cover the peripheral region of the color filter substrate; and the sealant encloses the conductive layer and the common electrode.

134. LG has had actual knowledge of the ’278 Patent, and of its infringement of the ’278 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN’s original Complaint identifying the ’278 Patent, Claim 1, and the LG 43-inch QNED television (Model No. 43QNED70AUA), together with the claim chart attached as Exhibit 2 mapping each element of Claim 1 to that product.

135. LG is and has been infringing one or more claims of the ’278 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG’s retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 43-inch QNED television (Model No. 43QNED70AUA)

has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 43-inch QNED television (Model No. 43QNED70AUA). In addition, as alleged below, LGE actively induces LGUSA's direct infringement of the '278 Patent.

136. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '278 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '278 Patent, including but not limited to at least Claim 1.

137. The LG 43QNED70AUA television practices Claim 1 of the '278 Patent as made and sold by LG, as shown in Exhibit 2. Every ordinary use of the LG 43QNED70AUA television for its intended purpose, that is, to display images, is a use of the apparatus claimed in Claim 1 of the '278 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG's statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG 43QNED70AUA television, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the '278 Patent.

138. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG 43QNED70AUA television, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG 43QNED70AUA television. On LG's own U.S. product page for the LG 43QNED70AUA television, LG promotes the product as a "43 Inch Class LG QNED AI QNED70A 4K Smart TV 2025," lists as "Key features" the "Dynamic QNED Color,"

"HDR10 Pro delivers a dramatic visual experience," and "See it as the Director intended with FILMMAKER MODE™," and specifies the panel as "Display Type" of "4K QNED" with a "Direct" backlight and "4K Ultra HD (3,840 x 2,160)" resolution. LG tells customers that "LG's Dynamic QNED Color and next-gen AI provide vivid color on your screen for a immersive [sic] visual experience," urges them to "Watch films just how the directors envisioned them," and to "Experience real-time action with virtually no tearing from FreeSync™, VRR, GeForce NOW and Xbox Cloud Gaming," and directs them to "Find a Retailer" to purchase the product. *See* https://www.lg.com/us/tvs/lg-43qned70aua-qned-4k-tv (last visited Nov. 19, 2026).

139. LG also furnishes purchasers and users of the LG 43QNED70AUA television with instructive materials and technical support that direct them to set up and use the LG 43QNED70AUA television in the manner that infringes Claim 1 of the '278 Patent. LG's U.S. product support page for the LG 43QNED70AUA television offers customers an "Owner's Manual" (English, dated 07/31/2025) and a "Quick Guide" (English, dated 12/11/2025) for download. The Owner's Manual, which lists the 43QNED70AUA among the models it covers and states that the "LG LED TV applies LCD screen with LED backlights," tells purchasers to "read this manual carefully before operating your set" (Owner's Manual at 1) and to "read this manual carefully and use the TV correctly" (at 14). Under the headings "Starting TV" and "Turning on the TV," it instructs them that "[y]ou can simply operate the TV functions, using the button," beginning with "Power On (Press)" (at 6), and that the remote control's "Power" button "[t]urns the TV on or off" (at 13). It instructs them how to connect video sources ("You can connect various external devices to the TV," at 6; "Supported external devices are: Blu-ray player, HD receivers, DVD players, VCRs, audio systems, USB storage devices, PC, gaming devices, and other external devices," at 7) and how to adjust the displayed picture ("adjust the brightness and contrast on the

[Picture] menu until the picture is clear," at 7), and it tells them that "[t]his panel is an advanced product that contains millions of pixels" (at 10). The Quick Guide, which covers the 43-inch QNED70A models, illustrates unpacking the television, attaching its stand, standing it upright, and connecting its power cord (Quick Guide at 1). A purchaser who follows these instructions turns the television on and displays images on its LCD screen. The same support page organizes LG articles' support content under the headings including "How to Operate," "How to Troubleshoot," and "How to Repair," and provides help articles instructing users how to use the television, including "LG TV - The Best Picture Settings For Your LG TV" ("Your LG TV pictures [sic] settings are set to factory defaults, but to get the most out of your TV, you can change and improve those settings depending on the environment where it will be viewed as well as your personal tastes."), "LG TV - How to Set the Default Input," "LG TV - How to Download Smart Apps," and "Mirror your smartphone to your LG TV wirelessly (Android and iPhone)." LG also offers "24/7 Chat Support" and "Video Tutorials," and, under the heading "Download Software," offers television software update files for download through the same page (e.g., "SW File(Version 33.31.80)," dated 10/14/2026, with a "TV_Software_Update_Guide"). LG's warranty for the television applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-43QNED70AUA.AUS (last visited Nov. 19, 2026).

140. LGE also actively induces LGUSA's direct infringement of the '278 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG 43QNED70AUA television; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs

and authorizes LGUSA to import, offer for sale, sell, and support the LG 43QNED70AUA television in the United States, with the specific intent that LGUSA do so.

141. LG has engaged in the conduct described above with knowledge of the ’278 Patent and with knowledge that the LG 43QNED70AUA television infringes Claim 1 of the ’278 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG 43QNED70AUA television or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG 43QNED70AUA television, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the ’278 Patent.

142. LG has therefore induced infringement by others of one or more claims of the ’278 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’278 Patent and with knowledge that such acts infringe one or more claims of the ’278 Patent, including but not limited to at least Claim 1.

143. LG is and has been infringing one or more claims of the ’278 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, including the LG 43-inch QNED television (Model No. 43QNED70AUA), within this District and throughout the United States. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 43-inch QNED television (Model No. 43QNED70AUA). The display devices supplied by LG are

especially made or especially adapted to practice the inventions claimed in the ’278 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’278 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’278 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

144. LG has therefore contributed to the infringement by others of one or more claims of the ’278 Patent, including but not limited to at least Claim 1.

145. LG’s infringement of one or more claims of the ’278 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’278 Patent and of IDUNN’s detailed, limitation-by-limitation allegations (Exhibit 2) that the LG 43QNED70AUA television infringes Claim 1 of the ’278 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not materially modified the LG 43QNED70AUA television or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG 43QNED70AUA television and to encourage and instruct others to sell and use it, in disregard of IDUNN’s patent rights. LG has therefore deliberately and intentionally infringed the ’278 Patent, and continues to do so, after receiving express and actual knowledge of both the ’278 Patent and its infringement thereof.

146. LG’s infringement of the ’278 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to

35 U.S.C. § 284 and to attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF THE '668 PATENT

147. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

148. LG is and has been directly infringing one or more claims of the '668 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

149. For example, exemplary Claim 1 of the '668 Patent is directed to:

> 1. A display device, comprising:
>
> a display panel;
>
> a circuit board electrically connected to the display panel and having at least one fixing portion; and
>
> a backlight module disposed at one side of the display panel, wherein the backlight module comprises:
>
> at least one light source;
>
> a lamp cover having an inner surface and an outer surface, wherein the at least one light source is at least partially surrounded by the inner surface; and
>
> at least one protruding portion located at the outer surface and integrated with the lamp cover to serve as a fixing structure; wherein
>
> the circuit board is disposed on the outer surface of the lamp cover; and
>
> the at least one protruding portion is in contact with the at least one fixing portion for constraining movements of the circuit board relative to the lamp cover.

150. LG's liquid crystal display monitors, including at least the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B), practice each element of at least, but not limited to, Claim 1 of the '668 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG UltraGear 24GS50F-B monitor practices each element of Claim 1 of the '668 Patent is attached as **Exhibit 3** and is incorporated by reference.

151. The LG UltraGear 24GS50F-B monitor is a display device comprising a display panel and an edge-lit backlight module. Physical disassembly of the accused monitor shows a circuit board electrically connected to the display panel and having at least one fixing portion; a backlight module including at least one light source at least partially surrounded by the inner surface of a lamp cover; and at least one protruding portion located at the outer surface of the lamp cover and integrated with the lamp cover, in contact with the fixing portion of the circuit board so as to constrain movements of the circuit board relative to the lamp cover, with the circuit board disposed on the outer surface of the lamp cover.

152. LG has had actual knowledge of the '668 Patent, and of its infringement of the '668 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN's original Complaint identifying the '668 Patent, Claim 1, and the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B), together with the claim chart attached as Exhibit 3 mapping each element of Claim 1 to that product.

153. LG is and has been infringing one or more claims of the '668 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG's retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-

B) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B). In addition, as alleged below, LGE actively induces LGUSA's direct infringement of the '668 Patent.

154. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '668 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '668 Patent, including but not limited to at least Claim 1.

155. The LG UltraGear 24GS50F-B monitor practices Claim 1 of the '668 Patent as made and sold by LG, as shown in Exhibit 3. Every ordinary use of the LG UltraGear 24GS50F-B monitor for its intended purpose, that is, to display images, is a use of the apparatus claimed in Claim 1 of the '668 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG's statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG UltraGear 24GS50F-B monitor, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the '668 Patent.

156. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG UltraGear 24GS50F-B monitor, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG UltraGear 24GS50F-B monitor. On LG's own U.S. product page for the LG UltraGear 24GS50F-B monitor, LG promotes the product as a "24 Inch

UltraGear™ FHD 180Hz AMD FreeSync™ HDR10 Gaming Monitor," lists as "Key features" a "24" FHD (1920 x 1080) Display," a "180Hz Refresh Rate with 1ms MBR," and a "3-Side Virtually Borderless Design," and specifies the panel as "Display Type" of "VA" with a "178º(R/L), 178º(U/D)" viewing angle. LG urges customers to "Ascend your game with the speed of UltraGear," to "Experience next-level Full HD gaming performance," to "Gear up for smooth gameplay at up to 180Hz refresh rate and 1ms MBR," to "Immerse yourself in a world of brilliant and dramatic color and contrast with HDR10 support," and to "Choose from a variety of modes including Gamer, FPS or RTS to optimize display settings for the best view possible," and tells them: "With two HMDI [sic] ports and DisplayPort connectivity on a tilt adjustable display, game to your specs." The page directs customers to "Find a Retailer" to purchase the product. *See* https://www.lg.com/us/monitors/lg-24gs50f-b-gaming-monitor (last visited Nov. 19, 2026).

157. LG also furnishes purchasers and users of the LG UltraGear 24GS50F-B monitor with instructive materials and technical support that direct them to set up and use the LG UltraGear 24GS50F-B monitor in the manner that infringes Claim 1 of the '668 Patent. LG's U.S. product support page for the LG UltraGear 24GS50F-B monitor offers customers an "Owner's Manual" (English, dated 01/27/2026) and a "Quick Guide" (English and Spanish, dated 01/27/2026) for download. The Owner's Manual, which covers the 24GS50F and states that the "LG LED Monitor applies LCD screen with LED backlights," tells purchasers to "read this manual carefully before operating your set" (Owner's Manual at 1). It then instructs them how to place the monitor ("Lift the monitor and place it on the table in an upright position," at 6); how to connect it to a computer or other video source (an HDMI or DisplayPort connection "[t]ransmits digital video and audio signals from your PC to the monitor," at 12, and "HDMI transmits digital video and audio signals from your AV device to the monitor," at 13); how to turn it on ("Press the joystick button once with

your finger to turn on the monitor," at 10); how to select the video input ("Press the joystick button, go to [Menu] > [Input], and then select the input option," at 11); and how to adjust the displayed picture ("[Brightness]: Adjusts the brightness of the screen," at 18, and "[FPS]: This mode is optimized for FPS games," at 15). The Quick Guide likewise tells purchasers to "read this manual carefully before operating your set" (Quick Guide at 1) and illustrates, step by step, attaching the stand, connecting a cable from a computer's HDMI or DisplayPort output to the monitor's "HDMI IN" or "DP IN" port, connecting the power adapter, and pressing the joystick button to turn the monitor on (Quick Guide at 2–4). A purchaser who follows these instructions connects the monitor to a video source, turns it on, and displays images on its LCD screen. The same support page organizes LG articles' support content under the headings "How to Setup," "How to Operate," "How to Troubleshoot," and "How to Repair," and provides help articles instructing users how to use the monitor, including "LG Monitor - Connecting to a Mac" ("Plug the monitor into the power outlet and check that it is receiving power. . . . Connect the cable . . . ."), "[LG UltraGear Gaming Monitor] How to enable Higher Refresh Rates (120Hz and Above)," and "LG Monitor - How to Adjust Screen Brightness." LG also offers its "OnScreen Control" software for download, "24/7 Chat Support" ("We're here to help you with immediate support around the clock."), and "Video Tutorials" ("How-to and troubleshooting videos on the LG support YouTube channel."). LG's warranty for the monitor applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-24GS50F-B.AUSQ (last visited Nov. 19, 2026).

158. LGE also actively induces LGUSA's direct infringement of the '668 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG UltraGear 24GS50F-B monitor; supplies it to LGUSA for importation into and sale within the United States;

controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG UltraGear 24GS50F-B monitor in the United States, with the specific intent that LGUSA do so.

159. LG has engaged in the conduct described above with knowledge of the '668 Patent and with knowledge that the LG UltraGear 24GS50F-B monitor infringes Claim 1 of the '668 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG UltraGear 24GS50F-B monitor or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG UltraGear 24GS50F-B monitor, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the '668 Patent.

160. LG has therefore induced infringement by others of one or more claims of the '668 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '668 Patent and with knowledge that such acts infringe one or more claims of the '668 Patent, including but not limited to at least Claim 1.

161. LG is and has been infringing one or more claims of the '668 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, including the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and/or end

users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG UltraGear 24-inch gaming monitor (Model No. 24GS50F-B). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the ’668 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’668 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’668 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

162. LG has therefore contributed to the infringement by others of one or more claims of the ’668 Patent, including but not limited to at least Claim 1.

163. LG’s infringement of one or more claims of the ’668 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’668 Patent and of IDUNN’s detailed, limitation-by-limitation allegations (Exhibit 3) that the LG UltraGear 24GS50F-B monitor infringes Claim 1 of the ’668 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not materially modified the LG UltraGear 24GS50F-B monitor or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG UltraGear 24GS50F-B monitor and to encourage and instruct others to sell and use it, in disregard of IDUNN’s patent rights. LG has therefore deliberately and intentionally infringed the ’668 Patent, and continues to do so, after receiving express and actual knowledge of both the ’668 Patent and its infringement thereof.

164. LG's infringement of the '668 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT IV: INFRINGEMENT OF THE '624 PATENT

165. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

166. LG is and has been directly infringing one or more claims of the '624 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

167. For example, exemplary Claim 1 of the '624 Patent is directed to:

> 1. An organic light emitting display device comprising:
>
> an active matrix substrate comprising an array of active elements disposed in an active region and a control circuit disposed in a peripheral region;
>
> a color filter substrate oppositely disposed to the active matrix substrate, comprising:
>
> > color filter elements with different colors;
> >
> > a black matrix layer enclosing the color filter elements in a region corresponding to the active region; and
> >
> > an extension of the black matrix layer in a region corresponding to the peripheral region;
>
> an array of OLED pixels interposed between the active matrix substrate and the color filter substrate on the active region, wherein

> each of the OLED pixels comprise an anode, an organic electroluminescent layer, and a cathode;
>
> a first conductive component electrically connecting the control circuit and the extension of the black matrix layer; and
>
> a second conductive component electrically connecting the black matrix layer and the cathode.

168. LG's OLED laptop computers, including at least the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), practice each element of at least, but not limited to, Claim 1 of the '624 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG gram 16T90TP laptop practices each element of Claim 1 of the '624 Patent is attached as **Exhibit 4** and is incorporated by reference.

169. The LG gram 16T90TP laptop incorporates an organic light emitting display device. Physical teardown analysis of the accused laptop's display module, including cross-sectional imaging, shows an active matrix substrate with an array of active elements in an active region; and an array of OLED pixels, each comprising an anode, an organic electroluminescent layer, and a cathode, interposed between the active matrix substrate and an opposite substrate. On information and belief, the active matrix substrate has a control circuit in a peripheral region; the opposite substrate is a color filter substrate with color filter elements of different colors, a black matrix layer enclosing the color filter elements in a region corresponding to the active region, and an extension of the black matrix layer in a region corresponding to the peripheral region; a first conductive component electrically connects the control circuit and the extension of the black matrix layer; and a second conductive component electrically connects the black matrix layer and the cathode.

170. LG has had actual knowledge of the '624 Patent, and of its infringement of the '624 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received

IDUNN's original Complaint identifying the '624 Patent, Claim 1, and the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), together with the claim chart attached as Exhibit 4 mapping each element of Claim 1 to that product.

171. LG is and has been infringing one or more claims of the '624 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG's retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP). In addition, as alleged below, LGE actively induces LGUSA's direct infringement of the '624 Patent.

172. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '624 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1.

173. The LG gram 16T90TP laptop practices Claim 1 of the '624 Patent as made and sold by LG, as shown in Exhibit 4. Every ordinary use of the LG gram 16T90TP laptop for its intended purpose, that is, to display images and to receive touch and stylus input on its display, is a use of the apparatus claimed in Claim 1 of the '624 Patent. No modification, configuration, or

unusual use of the product by the purchaser or user is required. LG's statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG gram 16T90TP laptop, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the '624 Patent.

174. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG gram 16T90TP laptop, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG gram 16T90TP laptop. On LG's own U.S. product page for the LG gram 16T90TP laptop, LG promotes the product as an "AI-enabled, 16" OLED 2-in-1 laptop" with a "16" VRR (48Hz - 120Hz) OLED touch display with immaculate color and deep blacks," and specifies the display as a "Touchscreen" with "WQXGA+ (2880x1800)" resolution. LG urges customers to "Work, create, and play your way with the LG gram Pro 2-in-1 16" touchscreen laptop," to "Seamlessly switch from laptop to tablet and everything in between with the 360° hinge," and to "Unleash your creativity with the included stylus pen featuring 4096 levels of pressure sensitivity," and tells them that the laptop's "variable refresh rate (VRR) technology adjusts to your needs, syncing faster refresh rates up to 120Hz for buttery-smooth gaming and crisp visuals." *See* https://www.lg.com/us/laptops/lg-16t90tp-k.aab4u1-gram-laptop (last visited Nov. 19, 2026).

175. LG also furnishes purchasers and users of the LG gram 16T90TP laptop with instructive materials and technical support that direct them to set up and use the LG gram 16T90TP laptop in the manner that infringes Claim 1 of the '624 Patent. LG's U.S. product support page for the LG gram 16T90TP laptop offers customers an "Owner's Manual" (English, dated 06/18/2026) and a "User Guide" (English, dated 01/14/2026) for download. The Owner's Manual tells purchasers to "read this owner's manual before use" (Owner's Manual at cover) and instructs them

to "[c]onnect the adapter to the USB-C® port on the PC" and "[p]ress the power button to turn on the PC" (at 4). It lists a "Stylus Pen" among the components supplied with the laptop (at 3), explains that "[i]f you use the Stylus Pen for the 16T90TP/16TB90TP/16TS90TP models, you can do fine touch operations that are difficult with fingers," and directs users to "[a]ttach the gram logo side of the Stylus Pen to the magnetic connector on the right side of the keyboard to activate the Stylus Pen" (at 4). The User Guide, titled "LG Easy Guide" for the "16T90TP/16TB90TP/16TS90TP Series," tells users, "Before using this machine, read this guide carefully" (User Guide at 86). It instructs them to "[u]se the touch screen for a faster and more convenient use of the computer," explaining, "Touching Once: Touch the screen once to produce the same effect as clicking the left mouse button" (at 102); to "[t]ap the screen once with the Stylus Pen's tip" and to "[m]ove the Stylus Pen with its tip pressed on the screen" (at 105–106); and to "[o]pen the notebook screen and turn it all the way to the rear to switch to the tablet PC mode" (at 86). It also describes an "OLED Panel Care" setting that "[a]llows you to set the function to protect the OLED panel (screen)" (at 128). A purchaser who follows these instructions turns the laptop on, displays images on its screen, and operates the laptop by touching the screen with a finger or with the supplied Stylus Pen. The same support page organizes LG articles' support content under the headings including, "How to Operate," "How to Troubleshoot," and "How to Repair," and provides help articles instructing users how to use the laptop, including "LG Gram - How to Use LG Gram Link" (screen sharing and mirroring) and "LG Gram - How to Install LG Software." LG also distributes drivers and its "LG Update" software for the laptop through the same page and offers "24/7 Chat Support" and "Video Tutorials." LG's warranty for the laptop applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-16T90TP-K.AAB4U1 (last visited Nov. 19, 2026).

176. LGE also actively induces LGUSA's direct infringement of the '624 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG gram 16T90TP laptop; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG gram 16T90TP laptop in the United States, with the specific intent that LGUSA do so.

177. LG has engaged in the conduct described above with knowledge of the '624 Patent and with knowledge that the LG gram 16T90TP laptop infringes Claim 1 of the '624 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG gram 16T90TP laptop or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG gram 16T90TP laptop, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the '624 Patent.

178. LG has therefore induced infringement by others of one or more claims of the '624 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the '624 Patent and with knowledge that such acts infringe one or more claims of the '624 Patent, including but not limited to at least Claim 1.

179. LG is and has been infringing one or more claims of the '624 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for

example LG's retail partners, customers, and/or end users of the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), within this District and throughout the United States. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the '624 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the '624 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the '624 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

180. LG has therefore contributed to the infringement by others of one or more claims of the '624 Patent, including but not limited to at least Claim 1.

181. LG's infringement of one or more claims of the '624 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the '624 Patent and of IDUNN's detailed, limitation-by-limitation allegations (Exhibit 4) that the LG gram 16T90TP laptop infringes Claim 1 of the '624 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not materially modified the LG gram 16T90TP laptop or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG gram 16T90TP laptop and to encourage and instruct others to sell and use it, in disregard of IDUNN's patent rights. LG has therefore deliberately and

intentionally infringed the ’624 Patent, and continues to do so, after receiving express and actual knowledge of both the ’624 Patent and its infringement thereof.

182. LG’s infringement of the ’624 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**COUNT V: INFRINGEMENT OF THE ’033 PATENT**

183. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

184. LG is and has been directly infringing one or more claims of the ’033 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

185. For example, exemplary Claim 1 of the ’033 Patent is directed to:

> 1. A display device, comprising:
>
> a backlight module, including:
>
> a bottom frame;
>
> a light guide, disposed above the bottom frame;
>
> an optical film structure, disposed above the light guide; and
>
> a top frame, covering a periphery of the optical film structure and covering a lateral side of the bottom frame, wherein the top frame includes:
>
> a first board; and
>
> a second board connected to the first board and covering a lateral surface of the light guide; and
>
> a panel, disposed above the top frame, wherein the first board is disposed between the optical film structure and the panel.

186. LG’s liquid crystal display monitors, including at least the LG UltraGear 32-inch curved gaming monitor (Model No. 32G60WA-B), practice each element of at least, but not limited to, Claim 1 of the ’033 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG UltraGear 32G60WA-B monitor practices each element of Claim 1 of the ’033 Patent is attached as **Exhibit 5** and is incorporated by reference.

187. The LG UltraGear 32G60WA-B monitor is a display device with a backlight module that includes a light guide. Physical disassembly of the accused monitor shows a backlight module including a bottom frame; a light guide disposed above the bottom frame; an optical film structure disposed above the light guide; a top frame covering a periphery of the optical film structure and covering a lateral side of the bottom frame, the top frame including a first board and a second board connected to the first board and covering a lateral surface of the light guide; and a

display panel disposed above the top frame, with the first board disposed between the optical film structure and the panel.

188. LG has had actual knowledge of the ’033 Patent, and of its infringement of the ’033 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN’s original Complaint identifying the ’033 Patent, Claim 1, and the LG UltraGear 32-inch curved gaming monitor (Model No. 32G60WA-B), together with the claim chart attached as Exhibit 5 mapping each element of Claim 1 to that product.

189. LG is and has been infringing one or more claims of the ’033 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG’s retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG UltraGear 32-inch curved gaming monitor (Model No. 32G60WA-B) has been and is being sold, offered for sale, and/or used by LG’s retail partners, customers, and/or end users. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG UltraGear 32-inch curved gaming monitor (Model No. 32G60WA-B). In addition, as alleged below, LGE actively induces LGUSA’s direct infringement of the ’033 Patent.

190. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’033 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1.

191. The LG UltraGear 32G60WA-B monitor practices Claim 1 of the ’033 Patent as made and sold by LG, as shown in Exhibit 5. Every ordinary use of the LG UltraGear 32G60WA-B monitor for its intended purpose, that is, to display images, is a use of the apparatus claimed in Claim 1 of the ’033 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG’s statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG UltraGear 32G60WA-B monitor, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the ’033 Patent.

192. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG UltraGear 32G60WA-B monitor, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG UltraGear 32G60WA-B monitor. On LG’s own U.S. product page for the LG UltraGear 32G60WA-B monitor, LG promotes the product as a “32 Inch UltraGear™ QHD 180Hz 1ms AMD FreeSync™ HDR10 1000R Curved Gaming Monitor,” offers it for sale directly (“$179.99” / “Add to Cart”), and urges customers to “Dive into immersive gameplay with a 32" QHD 1000R curved display, 180Hz refresh, 1ms response, HDR10, up to 99% sRGB, FreeSync™, and a sleek borderless design,” to “Immerse yourself in stunning visuals with HDR10 and up to 99% sRGB color gamut,” to “Choose from a variety of modes including Gamer, FPS or RTS to optimize display settings for the best view possible,” and to “Lose yourself in the action on a sleek, 3-side virtually borderless display,” telling them that “[w]ith HDMI, DisplayPort connectivity and tilt adjustment, this ultra-thin screen fits your battlestation perfectly.” *See* https://www.lg.com/us/monitors/lg-32g60wa-b-gaming-monitor (last visited Nov. 19, 2026).

193. LG also furnishes purchasers and users of the LG UltraGear 32G60WA-B monitor with instructive materials and technical support that direct them to set up and use the LG UltraGear

32G60WA-B monitor in the manner that infringes Claim 1 of the ’033 Patent. LG’s U.S. product support page for the LG UltraGear 32G60WA-B monitor offers customers an “Owner’s Manual” (English, dated 03/30/2026) and a “Quick Guide” (English and Spanish, dated 03/30/2026) for download. The Owner’s Manual, which covers the 32G60WA and states that the “LG LED Monitor applies LCD screen with LED backlights,” tells purchasers to “read this manual carefully before operating your set” (Owner’s Manual at 1). It then instructs them how to place the monitor (“Lift the monitor and place it on the table in an upright position,” at 6); how to connect it to a computer or other video source (an HDMI or DisplayPort connection “[t]ransmits digital video and audio signals from your PC to the monitor,” at 12–13, and “HDMI transmits digital video and audio signals from your AV device to the monitor,” at 13); how to turn it on (“Press the joystick button once with your finger to turn on the monitor,” at 10); how to select the video input (“Press the joystick button, go to [Menu] > [Input], and then select the input option,” at 12); and how to adjust the displayed picture (“[Brightness]: Adjusts the brightness of the screen,” at 18, and “[FPS]: This mode is optimized for FPS games,” at 16). The Quick Guide likewise tells purchasers to “read this manual carefully before operating your set” (Quick Guide at 1) and illustrates, step by step, attaching the stand, connecting a cable from a computer’s HDMI or DisplayPort output to the monitor’s “HDMI IN” or “DP IN” port, connecting the power adapter, and pressing the joystick button to turn the monitor on (Quick Guide at 2–4). A purchaser who follows these instructions connects the monitor to a video source, turns it on, and displays images on its LCD screen. The same support page organizes LG articles’ support content under the headings “How to Setup,” “How to Operate,” “How to Troubleshoot,” and “How to Repair,” and provides help articles instructing users how to use the monitor, including “LG Monitor - Connecting to a Mac” (“Plug the monitor into the power outlet and check that it is receiving power. . . . Connect the cable . . .

."), "[LG UltraGear Gaming Monitor] How to enable Higher Refresh Rates (120Hz and Above)," and "LG Monitor - How to Adjust Screen Brightness." LG also offers "24/7 Chat Support" ("We're here to help you with immediate support around the clock.") and "Video Tutorials" ("How-to and troubleshooting videos on the LG support YouTube channel."). LG's warranty for the monitor applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-32G60WA-B.AUSQ (last visited Nov. 19, 2026).

194. LGE also actively induces LGUSA's direct infringement of the '033 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG UltraGear 32G60WA-B monitor; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG UltraGear 32G60WA-B monitor in the United States, with the specific intent that LGUSA do so.

195. LG has engaged in the conduct described above with knowledge of the '033 Patent and with knowledge that the LG UltraGear 32G60WA-B monitor infringes Claim 1 of the '033 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG UltraGear 32G60WA-B monitor or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG UltraGear 32G60WA-B monitor, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the '033 Patent.

196. LG has therefore induced infringement by others of one or more claims of the ’033 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’033 Patent and with knowledge that such acts infringe one or more claims of the ’033 Patent, including but not limited to at least Claim 1.

197. LG is and has been infringing one or more claims of the ’033 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, including the LG UltraGear 32-inch curved gaming monitor (Model No. 32G60WA-B), within this District and throughout the United States. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG UltraGear 32-inch curved gaming monitor (Model No. 32G60WA-B). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the ’033 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’033 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’033 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

198. LG has therefore contributed to the infringement by others of one or more claims of the ’033 Patent, including but not limited to at least Claim 1.

199. LG’s infringement of one or more claims of the ’033 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’033 Patent and of IDUNN’s detailed, limitation-by-limitation allegations

(Exhibit 5) that the LG UltraGear 32G60WA-B monitor infringes Claim 1 of the ’033 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not materially modified the LG UltraGear 32G60WA-B monitor or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG UltraGear 32G60WA-B monitor and to encourage and instruct others to sell and use it, in disregard of IDUNN’s patent rights. LG has therefore deliberately and intentionally infringed the ’033 Patent, and continues to do so, after receiving express and actual knowledge of both the ’033 Patent and its infringement thereof.

200. LG’s infringement of the ’033 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**COUNT VI: INFRINGEMENT OF THE ’425 PATENT**

201. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

202. LG is and has been directly infringing one or more claims of the ’425 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

203. For example, exemplary Claim 1 of the ’425 Patent is directed to:

> 1. An organic light emitting diode, comprising:
>
> a reflecting layer;
>
> a resonance enhancing layer disposed on the reflecting layer;
>
> a first electrode disposed on the resonance enhancing layer, wherein the resonance enhancing layer is disposed between the reflecting layer and the first electrode;
>
> an organic layer disposed on the first electrode; and
>
> a second electrode disposed on the organic layer, wherein the organic layer is disposed between the first electrode and the second electrode,
>
> wherein a thickness of the resonance enhancing layer is in a range from 500 nm to 10 µm.

204. LG’s OLED laptop computers, including at least the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), practice each element of at least, but not limited to, Claim 1 of the ’425 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG gram 16T90TP laptop practices each element of Claim 1 of the ’425 Patent is attached as **Exhibit 6** and is incorporated by reference.

205. The OLED display of the LG gram 16T90TP laptop comprises organic light emitting diodes. Physical teardown analysis of the accused laptop’s display, including cross-sectional electron microscopy and elemental analysis, shows a reflecting layer; a resonance enhancing layer disposed on the reflecting layer, with a measured thickness of approximately 1.5 µm, within the claimed range of 500 nm to 10 µm; a first electrode disposed on the resonance enhancing layer, such that the resonance enhancing layer is disposed between the reflecting layer and the first electrode; an organic layer disposed on the first electrode; and a second electrode

disposed on the organic layer, such that the organic layer is disposed between the first electrode and the second electrode.

206. LG has had actual knowledge of the ’425 Patent, and of its infringement of the ’425 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN’s original Complaint identifying the ’425 Patent, Claim 1, and the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), together with the claim chart attached as Exhibit 6 mapping each element of Claim 1 to that product.

207. LG is and has been infringing one or more claims of the ’425 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG’s retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP) has been and is being sold, offered for sale, and/or used by LG’s retail partners, customers, and/or end users. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP). In addition, as alleged below, LGE actively induces LGUSA’s direct infringement of the ’425 Patent.

208. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’425 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’425 Patent, including but not limited to at least Claim 1.

209. The LG gram 16T90TP laptop practices Claim 1 of the ’425 Patent as made and sold by LG, as shown in Exhibit 6. Every ordinary use of the LG gram 16T90TP laptop for its intended purpose, that is, to display images and to receive touch and stylus input on its display, is a use of the apparatus claimed in Claim 1 of the ’425 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG’s statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG gram 16T90TP laptop, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the ’425 Patent.

210. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG gram 16T90TP laptop, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG gram 16T90TP laptop. On LG’s own U.S. product page for the LG gram 16T90TP laptop, LG promotes the product as an “AI-enabled, 16” OLED 2-in-1 laptop” with a “16" VRR (48Hz - 120Hz) OLED touch display with immaculate color and deep blacks,” and specifies the display as a “Touchscreen” with “WQXGA+ (2880x1800)” resolution. LG urges customers to “Work, create, and play your way with the LG gram Pro 2-in-1 16" touchscreen laptop,” to “Seamlessly switch from laptop to tablet and everything in between with the 360° hinge,” and to “Unleash your creativity with the included stylus pen featuring 4096 levels of pressure sensitivity,” and tells them that the laptop’s “variable refresh rate (VRR) technology adjusts to your needs, syncing faster refresh rates up to 120Hz for buttery-smooth gaming and crisp visuals.” *See* https://www.lg.com/us/laptops/lg-16t90tp-k.aab4u1-gram-laptop (last visited Nov. 19, 2026).

211. LG also furnishes purchasers and users of the LG gram 16T90TP laptop with instructive materials and technical support that direct them to set up and use the LG gram 16T90TP

laptop in the manner that infringes Claim 1 of the ’425 Patent. LG’s U.S. product support page for the LG gram 16T90TP laptop offers customers an “Owner’s Manual” (English, dated 06/18/2026) and a “User Guide” (English, dated 01/14/2026) for download. The Owner’s Manual tells purchasers to “read this owner’s manual before use” (Owner’s Manual at cover) and instructs them to “[c]onnect the adapter to the USB-C® port on the PC” and “[p]ress the power button to turn on the PC” (at 4). It lists a “Stylus Pen” among the components supplied with the laptop (at 3), explains that “[i]f you use the Stylus Pen for the 16T90TP/16TB90TP/16TS90TP models, you can do fine touch operations that are difficult with fingers,” and directs users to “[a]ttach the gram logo side of the Stylus Pen to the magnetic connector on the right side of the keyboard to activate the Stylus Pen” (at 4). The User Guide, titled “LG Easy Guide” for the “16T90TP/16TB90TP/16TS90TP Series,” tells users, “Before using this machine, read this guide carefully” (User Guide at 86). It instructs them to “[u]se the touch screen for a faster and more convenient use of the computer,” explaining, “Touching Once: Touch the screen once to produce the same effect as clicking the left mouse button” (at 102); to “[t]ap the screen once with the Stylus Pen’s tip” and to “[m]ove the Stylus Pen with its tip pressed on the screen” (at 105–106); and to “[o]pen the notebook screen and turn it all the way to the rear to switch to the tablet PC mode” (at 86). It also describes an “OLED Panel Care” setting that “[a]llows you to set the function to protect the OLED panel (screen)” (at 128). A purchaser who follows these instructions turns the laptop on, displays images on its screen, and operates the laptop by touching the screen with a finger or with the supplied Stylus Pen. The same support page organizes LG articles’ support content under the headings including “How to Operate,” “How to Troubleshoot,” and “How to Repair,” and provides help articles instructing users how to use the laptop, including “LG Gram - How to Use LG Gram Link” (screen sharing and mirroring) and “LG Gram - How to Install LG Software.” LG also

distributes drivers and its “LG Update” software for the laptop through the same page and offers “24/7 Chat Support” and “Video Tutorials.” LG’s warranty for the laptop applies “when such LG Product is purchased lawfully, installed and used in the United States.” *See* https://www.lg.com/us/support/product/lg-16T90TP-K.AAB4U1 (last visited Nov. 19, 2026).

212. LGE also actively induces LGUSA’s direct infringement of the ’425 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG gram 16T90TP laptop; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and “LG” branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG gram 16T90TP laptop in the United States, with the specific intent that LGUSA do so.

213. LG has engaged in the conduct described above with knowledge of the ’425 Patent and with knowledge that the LG gram 16T90TP laptop infringes Claim 1 of the ’425 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG gram 16T90TP laptop or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG gram 16T90TP laptop, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the ’425 Patent.

214. LG has therefore induced infringement by others of one or more claims of the ’425 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that

constitute infringement of the ’425 Patent and with knowledge that such acts infringe one or more claims of the ’425 Patent, including but not limited to at least Claim 1.

215. LG is and has been infringing one or more claims of the ’425 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), within this District and throughout the United States. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the ’425 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’425 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’425 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

216. LG has therefore contributed to the infringement by others of one or more claims of the ’425 Patent, including but not limited to at least Claim 1.

217. LG’s infringement of one or more claims of the ’425 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’425 Patent and of IDUNN’s detailed, limitation-by-limitation allegations (Exhibit 6) that the LG gram 16T90TP laptop infringes Claim 1 of the ’425 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not

materially modified the LG gram 16T90TP laptop or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG gram 16T90TP laptop and to encourage and instruct others to sell and use it, in disregard of IDUNN's patent rights. LG has therefore deliberately and intentionally infringed the '425 Patent, and continues to do so, after receiving express and actual knowledge of both the '425 Patent and its infringement thereof.

218. LG's infringement of the '425 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## COUNT VII: INFRINGEMENT OF THE '287 PATENT

219. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

220. LG is and has been directly infringing one or more claims of the '287 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

221. For example, exemplary Claim 1 of the ’287 Patent is directed to:

> 1. A display panel, comprising:
>
> a TFT substrate, including:
>
> a substrate;
>
> a thin film transistor disposed on the substrate and having a drain;
>
> a first insulating layer including a first sub-layer and a second sub-layer disposed on the drain sequentially, wherein the first sub-layer has a first opening with a first width, the second sub-layer has a second opening with a second width on the first opening, the first opening and the second opening form a first via, and the second width is greater than the first width;
>
> a passivation layer disposed on the first insulating layer;
>
> a second insulating layer disposed on the passivation layer; and
>
> a pixel electrode layer disposed on the second insulating layer and disposed in the first via to connect the drain;
>
> an opposite substrate; and
>
> a display layer disposed between the TFT substrate and the opposite substrate.

222. LG’s liquid crystal display televisions, including at least the LG 43-inch QNED television (Model No. 43QNED70AUA), practice each element of at least, but not limited to, Claim 1 of the ’287 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG 43QNED70AUA television practices each element of Claim 1 of the ’287 Patent is attached as **Exhibit 7** and is incorporated by reference.

223. The LG 43QNED70AUA television contains a liquid crystal display panel comprising a TFT substrate, an opposite substrate, and a display layer disposed between them. Physical teardown analysis of the accused television, including cross-sectional imaging and elemental line scans through the thin film transistor region of its panel, shows a thin film transistor

disposed on a substrate and having a drain. On information and belief, the TFT substrate further includes a first insulating layer including a first sub-layer and a second sub-layer disposed on the drain sequentially, with the first sub-layer having a first opening with a first width and the second sub-layer having a second opening, on the first opening, with a second width greater than the first width, the two openings forming a stepped via; a passivation layer disposed on the first insulating layer; a second insulating layer disposed on the passivation layer; and a pixel electrode layer disposed on the second insulating layer and extending into the via to connect to the drain.

224. LG has had actual knowledge of the ’287 Patent, and of its infringement of the ’287 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN’s original Complaint identifying the ’287 Patent, Claim 1, and the LG 43-inch QNED television (Model No. 43QNED70AUA), together with the claim chart attached as Exhibit 7 mapping each element of Claim 1 to that product.

225. LG is and has been infringing one or more claims of the ’287 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG’s retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG 43-inch QNED television (Model No. 43QNED70AUA) has been and is being sold, offered for sale, and/or used by LG’s retail partners, customers, and/or end users. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 43-inch QNED television (Model No. 43QNED70AUA). In addition, as alleged below, LGE actively induces LGUSA’s direct infringement of the ’287 Patent.

226. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the ’287 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the ’287 Patent, including but not limited to at least Claim 1.

227. The LG 43QNED70AUA television practices Claim 1 of the ’287 Patent as made and sold by LG, as shown in Exhibit 7. Every ordinary use of the LG 43QNED70AUA television for its intended purpose, that is, to display images, is a use of the apparatus claimed in Claim 1 of the ’287 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG’s statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG 43QNED70AUA television, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the ’287 Patent.

228. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG 43QNED70AUA television, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG 43QNED70AUA television. On LG’s own U.S. product page for the LG 43QNED70AUA television, LG promotes the product as a “43 Inch Class LG QNED AI QNED70A 4K Smart TV 2025,” lists as “Key features” the “Dynamic QNED Color,” “HDR10 Pro delivers a dramatic visual experience,” and “See it as the Director intended with FILMMAKER MODE™,” and specifies the panel as “Display Type” of “4K QNED” with a “Direct” backlight and “4K Ultra HD (3,840 x 2,160)” resolution. LG tells customers that “LG’s Dynamic QNED Color and next-gen AI provide vivid color on your screen for a immersive [sic] visual experience,” urges them to “Watch films just how the directors envisioned them,” and to

"Experience real-time action with virtually no tearing from FreeSync™, VRR, GeForce NOW and Xbox Cloud Gaming," and directs them to "Find a Retailer" to purchase the product. *See* https://www.lg.com/us/tvs/lg-43qned70aua-qned-4k-tv (last visited Nov. 19, 2026).

229. LG also furnishes purchasers and users of the LG 43QNED70AUA television with instructive materials and technical support that direct them to set up and use the LG 43QNED70AUA television in the manner that infringes Claim 1 of the '287 Patent. LG's U.S. product support page for the LG 43QNED70AUA television offers customers an "Owner's Manual" (English, dated 07/31/2025) and a "Quick Guide" (English, dated 12/11/2025) for download. The Owner's Manual, which lists the 43QNED70AUA among the models it covers and states that the "LG LED TV applies LCD screen with LED backlights," tells purchasers to "read this manual carefully before operating your set" (Owner's Manual at 1) and to "read this manual carefully and use the TV correctly" (at 14). Under the headings "Starting TV" and "Turning on the TV," it instructs them that "[y]ou can simply operate the TV functions, using the button," beginning with "Power On (Press)" (at 6), and that the remote control's "Power" button "[t]urns the TV on or off" (at 13). It instructs them how to connect video sources ("You can connect various external devices to the TV," at 6; "Supported external devices are: Blu-ray player, HD receivers, DVD players, VCRs, audio systems, USB storage devices, PC, gaming devices, and other external devices," at 7) and how to adjust the displayed picture ("adjust the brightness and contrast on the [Picture] menu until the picture is clear," at 7), and it tells them that "[t]his panel is an advanced product that contains millions of pixels" (at 10). The Quick Guide, which covers the 43-inch QNED70A models, illustrates unpacking the television, attaching its stand, standing it upright, and connecting its power cord (Quick Guide at 1). A purchaser who follows these instructions turns the television on and displays images on its LCD screen. The same support page organizes LG

articles' support content under the headings including "How to Operate," "How to Troubleshoot," and "How to Repair," and provides help articles instructing users how to use the television, including "LG TV - The Best Picture Settings For Your LG TV" ("Your LG TV pictures [sic] settings are set to factory defaults, but to get the most out of your TV, you can change and improve those settings depending on the environment where it will be viewed as well as your personal tastes."), "LG TV - How to Set the Default Input," "LG TV - How to Download Smart Apps," and "Mirror your smartphone to your LG TV wirelessly (Android and iPhone)." LG also offers "24/7 Chat Support" and "Video Tutorials," and under the heading "Download Software," offers television software update files for download through the same page (e.g., "SW File(Version 33.31.80)," dated 10/14/2026, with a "TV_Software_Update_Guide"). LG's warranty for the television applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-43QNED70AUA.AUS (last visited Nov. 19, 2026).

230. LGE also actively induces LGUSA's direct infringement of the '287 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG 43QNED70AUA television; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG 43QNED70AUA television in the United States, with the specific intent that LGUSA do so.

231. LG has engaged in the conduct described above with knowledge of the '287 Patent and with knowledge that the LG 43QNED70AUA television infringes Claim 1 of the '287 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since

acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG 43QNED70AUA television or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG 43QNED70AUA television, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the ’287 Patent.

232. LG has therefore induced infringement by others of one or more claims of the ’287 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’287 Patent and with knowledge that such acts infringe one or more claims of the ’287 Patent, including but not limited to at least Claim 1.

233. LG is and has been infringing one or more claims of the ’287 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, including the LG 43-inch QNED television (Model No. 43QNED70AUA), within this District and throughout the United States. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG 43-inch QNED television (Model No. 43QNED70AUA). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the ’287 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions claimed in the ’287 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions

claimed in the ’287 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

234. LG has therefore contributed to the infringement by others of one or more claims of the ’287 Patent, including but not limited to at least Claim 1.

235. LG’s infringement of one or more claims of the ’287 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’287 Patent and of IDUNN’s detailed, limitation-by-limitation allegations (Exhibit 7) that the LG 43QNED70AUA television infringes Claim 1 of the ’287 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not materially modified the LG 43QNED70AUA television or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG 43QNED70AUA television and to encourage and instruct others to sell and use it, in disregard of IDUNN’s patent rights. LG has therefore deliberately and intentionally infringed the ’287 Patent, and continues to do so, after receiving express and actual knowledge of both the ’287 Patent and its infringement thereof.

236. LG’s infringement of the ’287 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

**COUNT VIII: INFRINGEMENT OF THE ’305 PATENT**

237. IDUNN incorporates by reference the preceding paragraphs as though fully set forth herein.

238. LG is and has been directly infringing one or more claims of the ’305 Patent, including but not limited to at least Claim 1, either literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling within the United States, and/or by importing into the United States, without authority, at least one of the Accused Products.

239. For example, exemplary Claim 1 of the ’305 Patent is directed to:

> 1. A touch display apparatus, comprising:
>
> a display panel including a first substrate and a second substrate disposed oppositely, wherein the first substrate has a first side, the second substrate has a second side corresponding to the first side, and the first side is disposed beyond the second side;
>
> a touch panel, including a touch substrate, wherein the second substrate is disposed between the touch substrate and the first substrate, and the area of the touch substrate is less than or equal to that of the second substrate, wherein the touch substrate has a third side, and the second substrate has a side corresponding to the third side, and the third side is disposed beyond the side of the second substrate corresponding to the third side; and
>
> a buffer element disposed between the touch substrate and the first substrate and adjacent to the third side of the touch substrate, wherein the buffer element has a lengthwise direction, and along the lengthwise direction, the buffer element has a first length, the first substrate has a second length and the touch substrate has a third length, and the first length is less than or equal to the second length and is larger than or equal to the third length.

240. LG’s OLED laptop computers, including at least the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), practice each element of at least, but not limited to, Claim 1 of the ’305 Patent. A claim chart demonstrating, on a limitation-by-limitation basis, how the LG

gram 16T90TP laptop practices each element of Claim 1 of the ’305 Patent is attached as **Exhibit 8** and is incorporated by reference.

241. The LG gram 16T90TP laptop is a touch display apparatus incorporating a touch panel above its OLED display panel. Physical teardown analysis of the accused laptop’s display module shows a display panel including a first substrate and a second substrate disposed oppositely, with a first side of the first substrate disposed beyond the corresponding second side of the second substrate; a touch panel including a touch substrate, with the second substrate disposed between the touch substrate and the first substrate, and a third side of the touch substrate disposed beyond the corresponding side of the second substrate; and a buffer element disposed between the touch substrate and the first substrate adjacent to the third side of the touch substrate, having a first length along its lengthwise direction that is less than or equal to the length of the first substrate and greater than or equal to the length of the touch substrate. On information and belief, the area of the touch substrate is less than or equal to that of the second substrate.

242. LG has had actual knowledge of the ’305 Patent, and of its infringement of the ’305 Patent, since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), when LG received IDUNN’s original Complaint identifying the ’305 Patent, Claim 1, and the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), together with the claim chart attached as Exhibit 8 mapping each element of Claim 1 to that product.

243. LG is and has been infringing one or more claims of the ’305 Patent, including but not limited to at least Claim 1, by actively inducing third parties to infringe, including LG’s retail partners (such as Best Buy, Walmart, and Amazon), distributors, customers, and end users of the Accused Products, within this District and throughout the United States. For example, on information and belief, at least the LG gram Pro 2-in-1 16-inch OLED laptop (Model No.

16T90TP) has been and is being sold, offered for sale, and/or used by LG's retail partners, customers, and/or end users. Direct infringement by LG's retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP). In addition, as alleged below, LGE actively induces LGUSA's direct infringement of the '305 Patent.

244. On information and belief, LG supplies display devices that are especially made or especially adapted to practice the inventions claimed in the '305 Patent, including but not limited to at least Claim 1, to induce third parties, including for example LG's retail partners, customers, and/or end users of the Accused Products, to use, offer for sale, and/or sell the Accused Products in a manner that would infringe one or more claims of the '305 Patent, including but not limited to at least Claim 1.

245. The LG gram 16T90TP laptop practices Claim 1 of the '305 Patent as made and sold by LG, as shown in Exhibit 8. Every ordinary use of the LG gram 16T90TP laptop for its intended purpose, that is, to display images and to receive touch and stylus input on its display, is a use of the apparatus claimed in Claim 1 of the '305 Patent. No modification, configuration, or unusual use of the product by the purchaser or user is required. LG's statements and materials encouraging purchasers and users to acquire, set up, power on, and use the LG gram 16T90TP laptop, described below, are therefore statements and materials encouraging acts that directly infringe Claim 1 of the '305 Patent.

246. LG takes affirmative steps, through statements designed to stimulate the purchase and use of the LG gram 16T90TP laptop, to encourage its retail partners, customers, and end users to sell, offer to sell, and use the LG gram 16T90TP laptop. On LG's own U.S. product page for the LG gram 16T90TP laptop, LG promotes the product as an "AI-enabled, 16" OLED 2-in-1 laptop"

with a “16" VRR (48Hz - 120Hz) OLED touch display with immaculate color and deep blacks,” and specifies the display as a “Touchscreen” with “WQXGA+ (2880x1800)” resolution. LG urges customers to “Work, create, and play your way with the LG gram Pro 2-in-1 16" touchscreen laptop,” to “Seamlessly switch from laptop to tablet and everything in between with the 360° hinge,” and to “Unleash your creativity with the included stylus pen featuring 4096 levels of pressure sensitivity,” and tells them that the laptop’s “variable refresh rate (VRR) technology adjusts to your needs, syncing faster refresh rates up to 120Hz for buttery-smooth gaming and crisp visuals.” *See* https://www.lg.com/us/laptops/lg-16t90tp-k.aab4u1-gram-laptop (last visited Nov. 19, 2026).

247. LG also furnishes purchasers and users of the LG gram 16T90TP laptop with instructive materials and technical support that direct them to set up and use the LG gram 16T90TP laptop in the manner that infringes Claim 1 of the ’305 Patent. LG’s U.S. product support page for the LG gram 16T90TP laptop offers customers an “Owner’s Manual” (English, dated 06/18/2026) and a “User Guide” (English, dated 01/14/2026) for download. The Owner’s Manual tells purchasers to “read this owner’s manual before use” (Owner’s Manual at cover) and instructs them to “[c]onnect the adapter to the USB-C® port on the PC” and “[p]ress the power button to turn on the PC” (at 4). It lists a “Stylus Pen” among the components supplied with the laptop (at 3), explains that “[i]f you use the Stylus Pen for the 16T90TP/16TB90TP/16TS90TP models, you can do fine touch operations that are difficult with fingers,” and directs users to “[a]ttach the gram logo side of the Stylus Pen to the magnetic connector on the right side of the keyboard to activate the Stylus Pen” (at 4). The User Guide, titled “LG Easy Guide” for the “16T90TP/16TB90TP/16TS90TP Series,” tells users, “Before using this machine, read this guide carefully” (User Guide at 86). It instructs them to “[u]se the touch screen for a faster and more

convenient use of the computer," explaining, "Touching Once: Touch the screen once to produce the same effect as clicking the left mouse button" (at 102); to "[t]ap the screen once with the Stylus Pen's tip" and to "[m]ove the Stylus Pen with its tip pressed on the screen" (at 105–106); and to "[o]pen the notebook screen and turn it all the way to the rear to switch to the tablet PC mode" (at 86). It also describes an "OLED Panel Care" setting that "[a]llows you to set the function to protect the OLED panel (screen)" (at 128). A purchaser who follows these instructions turns the laptop on, displays images on its screen, and operates the laptop by touching the screen with a finger or with the supplied Stylus Pen. The same support page organizes LG articles' support content under the headings including "How to Operate," "How to Troubleshoot," and "How to Repair," and provides help articles instructing users how to use the laptop, including "LG Gram - How to Use LG Gram Link" (screen sharing and mirroring) and "LG Gram - How to Install LG Software." LG also distributes drivers and its "LG Update" software for the laptop through the same page and offers "24/7 Chat Support" and "Video Tutorials." LG's warranty for the laptop applies "when such LG Product is purchased lawfully, installed and used in the United States." *See* https://www.lg.com/us/support/product/lg-16T90TP-K.AAB4U1 (last visited Nov. 19, 2026).

248. LGE also actively induces LGUSA's direct infringement of the '305 Patent. As alleged above, LGE designs and manufactures (or directs the manufacture of) the LG gram 16T90TP laptop; supplies it to LGUSA for importation into and sale within the United States; controls its specifications and "LG" branding and the content of the marketing, specification, support, and instructional materials for it published at www.lg.com/us; and directs and authorizes LGUSA to import, offer for sale, sell, and support the LG gram 16T90TP laptop in the United States, with the specific intent that LGUSA do so.

249. LG has engaged in the conduct described above with knowledge of the ’305 Patent and with knowledge that the LG gram 16T90TP laptop infringes Claim 1 of the ’305 Patent since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE), as alleged above. Since acquiring that knowledge, LG has continued to publish the statements, specifications, and instructions identified above and, on information and belief, has made no material change to the LG gram 16T90TP laptop or to its marketing, instructional, and support materials bearing on the infringement alleged in this Count, and has continued to encourage and instruct its retail partners, customers, and end users to sell, offer to sell, and use the LG gram 16T90TP laptop, with the specific intent that they do so, and with knowledge, or at a minimum willful blindness to the fact, that those acts constitute infringement of Claim 1 of the ’305 Patent.

250. LG has therefore induced infringement by others of one or more claims of the ’305 Patent, including but not limited to at least Claim 1, with the specific intent to induce acts that constitute infringement of the ’305 Patent and with knowledge that such acts infringe one or more claims of the ’305 Patent, including but not limited to at least Claim 1.

251. LG is and has been infringing one or more claims of the ’305 Patent, including but not limited to at least Claim 1, by contributing to infringement by third parties, including for example LG’s retail partners, customers, and/or end users of the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP), within this District and throughout the United States. Direct infringement by LG’s retail partners, customers, and/or end users occurs at least by selling, offering to sell, and/or using the Accused Products, including the LG gram Pro 2-in-1 16-inch OLED laptop (Model No. 16T90TP). The display devices supplied by LG are especially made or especially adapted to practice the inventions claimed in the ’305 Patent, including but not limited to at least Claim 1, and (i) are a material part of the inventions

claimed in the ’305 Patent and (ii) are not staple articles or commodities of commerce suitable for substantial non-infringing use at least because they are specifically designed to use the inventions claimed in the ’305 Patent. Any other use of such display devices would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

252. LG has therefore contributed to the infringement by others of one or more claims of the ’305 Patent, including but not limited to at least Claim 1.

253. LG’s infringement of one or more claims of the ’305 Patent, including but not limited to at least Claim 1, has been, and continues to be, willful since no later than July 17, 2026 (LGUSA) and August 4, 2026 (LGE). As alleged above, since those dates LG has had actual knowledge of the ’305 Patent and of IDUNN’s detailed, limitation-by-limitation allegations (Exhibit 8) that the LG gram 16T90TP laptop infringes Claim 1 of the ’305 Patent. Despite that knowledge, LG has not ceased its infringing activities and, on information and belief, has not materially modified the LG gram 16T90TP laptop or materially altered its marketing, instructional, or support materials for it in any respect bearing on its infringement. LG has instead continued to make, import, offer for sale, and sell the LG gram 16T90TP laptop and to encourage and instruct others to sell and use it, in disregard of IDUNN’s patent rights. LG has therefore deliberately and intentionally infringed the ’305 Patent, and continues to do so, after receiving express and actual knowledge of both the ’305 Patent and its infringement thereof.

254. LG’s infringement of the ’305 Patent, including but not limited to at least Claim 1, has been and continues to be willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling IDUNN to increased damages pursuant to 35 U.S.C. § 284 and to attorneys’ fees incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

## DAMAGES

255. Defendants' acts of infringement have caused damages to IDUNN, and IDUNN is entitled to recover from Defendants the damages it has sustained as a result of Defendants' wrongful acts in an amount to be determined at trial.

256. IDUNN is entitled, and now seeks, to recover damages in an amount not less than the maximum amount permitted by law for Defendants' infringement of the Asserted Patents occurring on and after July 10, 2026, subject to the reservation alleged above.

257. As a result of Defendants' acts of infringement, IDUNN has suffered actual and consequential damages. To the fullest extent permitted by law, IDUNN seeks recovery of damages in an amount adequate to compensate for Defendants' infringement. IDUNN further seeks any other damages to which it would be entitled in law or in equity.

## INJUNCTIVE RELIEF

258. LG's acts of infringement have caused, and unless restrained and enjoined will continue to cause, irreparable injury and damage to IDUNN for which IDUNN has no adequate remedy at law. Unless enjoined by this Court, LG will continue to infringe the claims of the Asserted Patents.

## ATTORNEYS' FEES

259. IDUNN is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## DEMAND FOR JURY TRIAL

260. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, IDUNN demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, IDUNN prays for judgment and requests that the Court find in its favor and against Defendants. IDUNN respectfully requests that the Court enter preliminary and final orders, declarations, and judgments against Defendants as are necessary to provide IDUNN with the following relief:

a. A judgment that Defendants have infringed and/or are infringing one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, directly and indirectly, as alleged above;

b. A judgment that Defendants' infringement of one or more claims of the Asserted Patents has been willful;

c. An award for all damages and costs arising out of Defendants' infringement, to adequately compensate IDUNN for Defendants' infringement of the Asserted Patents, but in no event less than a reasonable royalty, including an accounting of damages up to any verdict as well as supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

d. Pre-judgment and post-judgment interest, jointly and severally, in an amount according to proof;

e. Treble damages based on Defendants' willful infringement;

f. An accounting of damages and any future compensation due to IDUNN for Defendants' infringement (past, present, or future) not specifically accounted for in damages or other relief, and/or permanent injunctive relief;

g. A judgment that this case is exceptional, and an award of reasonable attorneys' fees as provided by 35 U.S.C. § 285 and enhanced damages as provided by 35 U.S.C. § 284;

h. An award of costs of suit; and

i. All further relief in law or in equity as the Court may deem just and proper.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Justin Constant*
Justin Constant
State Bar No. 24067551
*Lead Counsel*
BLUE PEAK LAW GROUP LLP
3139 W. Holcombe Blvd., PMB 8160
Houston, Texas 77025-1533
Tel./Fax: (281) 972-3036
Email: justin@bluepeak.law

Andrea L. Fair
State Bar No. 24078488
Email: andrea@millerfairhenry.com
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Tel.: (903) 757-6400
Fax: (903) 757-2323

*Attorneys for Plaintiff*
*IDUNN IP Holdings LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 20, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Justin Constant*
Justin Constant